ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, California 90071
Tel: (213) 489-1600; Fax: (213) 489-1611

Attorneys for Plaintiff
LUIS ESCALANTE, on behalf of himself and
all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ESCALANTE, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICE, dba BLUE SHIELD OF CALIFORNIA,<br><br>Defendant. | CASE NO. 2:14-CV-3021 DDP-PJWx<br>Assigned to Honorable Dean D. Pregerson<br><br>**PLAINTIFF'S REDACTED NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; DECLARATION OF ADRIAN J. BARRIO**<br><br>Hearing Date: June 22, 2015<br>Time: 10:00 a.m.<br>Location: Courtroom 3<br><br>[Filed concurrently with Redacted Appendix of Exhibits, and Declaration of Luis Escalante] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 22, 2015 at 10:00 a.m. in Courtroom 3 of the United States District Court, Central District of California, located at 312 North Spring Street, Los Angeles, California, Plaintiff Luis Escalante will move the Court for an order, pursuant to Rules 23(a), (b)(1) and (b)(2) of the Federal Rules of Civil Procedure, certifying the following Class:

> All persons covered under private employer plans with Blue Shield of California who at any time from April 18, 2010 were advised or learned, or will be advised or learn in the future, that Blue Shield deems lumbar artificial disc replacement (ADR) surgery for their back conditions "investigational" and excluded from coverage.

Plaintiff also requests that the Court appoint him as class representative and appoint his counsel as Class Counsel. This motion is based on this notice, the attached memorandum of points and authorities, the supporting declarations, the Appendix of Exhibits filed herewith, the Court's files and records, and such oral arguments that may be heard at the hearing on this motion.

DATED: April 20, 2015 GIANELLI & MORRIS

By: /s/ Adrian J. Barrio
Attorney for Plaintiff

# TABLE OF CONTENTS

***Pages***


MEMORANDUM OF POINTS AND AUTHORITIES.......................... 1

I. INTRODUCTION.......................................................... 1

II. STATEMENT OF FACTS.................................................. 2

A. Blue Shield......................................................2

B. Artificial Disc Replacement ("ADR")...............................2

C. Blue Shield's categorical denial of members' requests for ADR........................................................ 3

D. Blue Shield makes its position on lumbar ADR known through its published Medical Policy and in its communications with physicians' offices...........................5

E. Plaintiff Luis Escalante was denied coverage for lumbar ADR under Blue Shield's established practice........... 6

III. ARGUMENT.............................................................. 8

A. Class certification standards........................................ 8

B. Rule 23(a) requirements.............................................. 9

1. Numerosity.................................................... 9

a. Blue Shield's chart lacks foundation..................10

b. Blue Shield's chart does not account for members who did not pursue coverage due to Blue Shield's publication of its position that lumbar ADR is not a covered service...................................... 12

c. Even if the class were limited to members who made formal requests and/or claims for lumbar ADR, the numerosity requirement is satisfied....... 16

2. Commonality ........ 15

3. Typicality ........ 18

4. Adequacy ........ 18

B. Rule 23(b) requirements ........ 19

1. Rule 23(b)(1) ........ 20

2. Rule 23(b)(2) ........ 21

C. Implicit requirement: Ascertainability ........ 22

V. CONCLUSION ........ 23

# TABLE OF AUTHORITIES

***Cases*** ***Pages***

*Abramovitz v. Ahern*
96 F.R.D. 208 (D. Conn. 1982)……………………………………………20

*Arkansas Ed. Ass'n v. Board of Ed. Of Portland, Ark. School Dist.*
446 F.2d 763 (8th Cir. 1971)…………………………………………..13

*Armstrong v. Davis*
275 F.3d 849 (9th Cir. 2001)………………………………………… 18

*Arnold v. United Theatre Circuit, Inc.*
158 F.R.D. 439 (N.D. Cal. 1994)………………………………………22

*Baby Neal for and by Kanter v. Casey*
43 F.3d 48, 58 (3d Cir. 1994)…………………………………………21

*Bates v. United Parcel Service*
204 F.R.D. 440 (N.D. Cal. 2001)…………………………………...9

*Blackie v. Barrack*
524 F.2d 891 (9th Cir. 1975)……………………………………….. 8

*Bublitz v. E.I. Du Pont de Nemours and Co.*
202 F.R.D. 25 (S.D. Iowa 2001)………………………………………9

*County of Los Angeles v. Jordan*
459 U.S. 810 (1982)………………………………………………….. 14

*Cypress v. Newport New General and Nonsectarian Hosp. Ass'n*
375 F.2d 648 (4th Cir. 1967)………………………………………….. 12

*Disability Rights Council of Greater Washington v. WMATA*
239 F.R.D. 9 (D.D.C. 2007)……………………………………………16

*Finch v. N.Y. State Office of Children & Family Servs.*
252 F.R.D. 192 (S.D.N.Y. 2008)………………………………………. 22

*Haley v. Medtronic, Inc.*
169 F.R.D. 643 (C.D. Cal. 1996)…………………………………….. 14

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir.1998)……………………………………………..16

*Horn v. Associated Wholesale Grocers, Inc.*
555 F.2d 270 (10th Cir. 1977)……………………………………8, 9, 12

*Jackson v. Danberg*
240 F.R.D. 145 (D. Del. 2007)…………………………………9, 12, 14

*Johnson v. California*
543 U.S. 499………………………………………………………….. 18

*Jordan v. County of Los Angeles*
669 F.2d 1311 (9th Cir. 1982)…………………………………………15

*Kleiner v. First Nat'l Bank of Atlanta*
97 F.R.D. 683 (N.D. Ga. 1983)………………………………………..17

*Menagerie Productions v. Citysearch*
2009 WL 3770668 at *4 (C.D. Cal. 2009)……………………………17

*Marisol A. v. Guiliani*
126 F.3d 372 (2d Cir. 1997)………………………………………... 23

*Mazza v. Am. Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012)…………………………………………..16, 18

*McMillon v. Hawaii*
261 F.R.D. 536 (D. Hawaii 2009)…………………………………….. 9, 14

*Moeller v. Taco Bell Corporation*
220 F.R.D. 604 (N.D. Cal. 2004)……………………………9, 12, 14, 22

*Parra v. Bashas', Inc.*
536 F.3d 975 (9th Cir. 2008)…………………………………………..16

*Parsons v. Ryan*
754 F.3d 657 (9th Cir. 2014)……………………………………16, 18, 21

*Robertson v. National Basketball Ass'n*
556 F.2d 682 (2d Cir. 1977)…………………………………………...20

*Shelton v. Bledsoe*
775 F.3d 554 (3d Cir. 2015)........................................... 22, 23

*Shook v. El Paso Count*
386 F.3d 963 (10th Cir. 2004)..........................................23

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003)........................................... 19

*United States v. Rich*
580 F.2d 929 (9th Cir. 1978)........................................... 11

*Weinberger v. Thornton*
114 F.R.D. 599 (S.D. Cal. 1986)...................................... 18

*Weiss v. New York Hospital*
745 F.2d 786 (3d Cir. 1984)............................................9

*Yaffe v. Powers*
454 F.2d 1362 (1st Cir. 1972)......................................... 23

*Z.D. ex rel. J.D. v. Group Health Cooperative*
2012 WL 1977962 at *3..................................................17

*Zinser v. Accufix Research Institute, Inc.*
253 F.3d 1180 (9th Cir. 2001)......................................... 20

***Statutes***

California Health & Safety Code
§ 1345.................................................................... 2

Federal Rules of Civil Procedure
Rule 23.................................................................*passim*

United States Code
29 U.S.C § 1132......................................................... 16

***Treatises***

1 Robert Newberg, Newberg on Class Actions (4th ed. 2002)....................12, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This putative class action challenges defendant California Physicians' Service dba Blue Shield of California's ("Blue Shield") practice of denying coverage for lumbar artificial disc replacement ("ADR") on the ground that such lumbar ADR is "investigational."

Blue Shield has developed and used internal guidelines and policies which provide that lumbar ADR is considered "investigational" in all circumstances. Under these guidelines and policies, Blue Shield has systematically denied all requests for lumbar ADR as investigational—despite the fact that lumbar ADR is FDA-approved and has proven to be a safe, effective, and often recommended procedure to treat lumbar disc disease.

Plaintiff Luis Escalante ("Escalante" or "Plaintiff") is a Blue Shield member suffering from lumbar disc disease whose physician recommended that he undergo lumbar ADR. Pursuant to its established policies, practices and procedures that are applied uniformly to all Blue Shield members, Blue Shield denied Escalante's request for lumbar ADR on the ground that lumbar ADR is an "investigational" treatment. Blue Shield did not consider Escalante's individual medical need for the surgery. Blue Shield denied Escalante's appeal on the same basis. Blue Shield admits that it treated Escalante's claim they way it treats all other claims for lumbar ADR.

Escalante now seeks to certify a class of similarly-situated Blue Shield members under Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. The facts of this case meet class certification requirements, and the specific requirements of these subsections, because Blue Shield's policy of denying requests and/or claims for lumbar ADR is uniform. Blue Shield has categorically denied all requests and/or claims for lumbar ADR without regard to members' individual medical need. As a result, the claims of all putative class members are

identical and amenable to resolution in a single action. For these and other reasons set forth below, this Court should grant this motion and certify the proposed class.

## II. STATEMENT OF FACTS

### A. Blue Shield

Blue Shield is a "health care service plan" licensed by the California Department of Managed Health Care ("DMHC") and subject to the relevant provisions of the California Health & Safety Code. (Appendix of Exhibits,[1] Ex. 1, at 5.) Under this regime, a contract is called an evidence of coverage ("EOC"), the person purchasing the coverage (or eligible for it through employment) is called the "subscriber" or "member," and the entity providing the coverage is the "plan." (*Id.*) *See also* Health & Safety Code § 1345.

Blue Shield members are provided EOCs setting forth the terms and conditions of their coverage. (Ex. 1 at 5.) Included within the EOCs are various exclusions including one that excludes coverage for services that are "investigational." (*Id.*)

### B. Artificial Disc Replacement ("ADR")

Traditionally, surgeons recommended a procedure known as a spinal fusion to treat degenerative lumbar disc disease. (Ex. 1 at 5.) Fusion, however, causes a lack of mobility at the fused disc level and, consequently, more stress on the adjacent disc levels, leading to a greater risk of additional disc herniation/disease. (*Id.*; Ex. 2 at 21.)

With ADR, the diseased disc is replaced with an artificial disc in a procedure known as a spinal arthroplasty. (Ex. 1 at 5.) Use of the artificial disc maintains the integrity of the disc space while providing the flexibility of a natural disc. (*Id.*; Ex. 2 at 21.) This spares the adjacent discs from increased stress while providing the patient with greater mobility. (Ex. 1 at 5; Ex. 2 at 21.)

---

[1] All references to Exhibits are those in the Appendix of Exhibits, filed herewith.

Lumbar ADR surgery has been an accepted and effective treatment for degenerative lumbar disc disease for over ten years. Disc implantation via surgery was first approved for use in the general patient population in 2004, when the Charité Artificial Disc received FDA approval. (Ex. 1 at 5.) Two years later, on August 16, 2006, the ProDisc-L Total Disc Replacement received FDA approval. (*Id*. at 6; Ex. 2 at 38-44.)

Manufactured by Synthes Spine, Inc., the ProDisc-L is a second type of artificial disc used in ADR surgical procedures. (Ex. 1 at 6; Ex. 2 at 21.) In addition to "premarket" approval requirements, the FDA approval process for the ProDisc-L required rigorous "postmarket" testing and clinical evaluation, which measured and found safe and effective patient outcomes at both the two and five-year marks post-surgery. (Ex. 2 at 21-37.)

Thousands of spinal arthroplasties have been performed using the ProDisc-L and Charité artificial discs. (Ex. 1 at 6.) Artificial disc implantation has proven to be safe and effective in the treatment of degenerative disc disease and is performed at leading medical centers such as Cedars-Sinai Medical Center and USC Center for Spinal Surgery. (Ex. 1 at 6; Ex. 2 at 21-37; *see generally* Exs. 3 and 4.)

**C. Blue Shield's categorical denial of members' requests for ADR**

Blue Shield's EOCs contains an exclusion for services or supplies that are "Experimental or Investigational in Nature." That phrase is defined in the definitions section on the contracts as follows:

> Experimental or Investigational in Nature – any treatment, therapy, procedure, drug or drug usage, facility or facility usage, equipment or equipment usage, device or device usage, or supplies which are not recognized in accordance with generally accepted professional medical standards as being safe and effective for use in the treatment of the illness, injury or condition at issue. Services which require approval by the federal government or any agency thereof, or by any State government agency, prior to use and where such approval has not been granted at the time the services or supplies were rendered, shall be considered investigational or experimental in nature. Services or

> supplies which themselves are not approved or recognized in accordance with accepted professional medical standards, but nevertheless are authorized by law or by a government agency for use in testing, trials, or other studies on human patients, shall be considered experimental or investigational in nature.

(Ex. 5 at 110.)

All of Blue Shield's contracts contain this definition of "Experimental or Investigational in Nature." (*See generally* Ex. 6; Ex. 7 at 143, 144.)

Blue Shield has categorically denied services for lumbar ADR surgery on the ground that it is an "investigational" procedure excluded under its EOCs. Blue Shield's application of "investigational" exclusion is "categorical" because Blue Shield asserts it to bar coverage for lumbar ADR in all circumstances, regardless of the member's individual medical profile. (Ex. 7 at 131, 135-136, 137, 138-139, 140, 142.) This has been Blue Shield's policy and practice from at least the beginning of the class period, April 18, 2010—four years within the filing of the complaint. (Ex. 7 at 131, 135-136.)

Blue Shield's policy and practice derives from its "Medical Policy" on artificial intervertebral discs. This is Blue Shield's guideline on procedures that include lumbar ADR. The Medical Policy developed by Blue Shield that went into effect on February 8, 2010 flatly states [redacted] (Ex. 8 at 162)(emphasis in original). Subsequent versions of Blue Shield's medical policy, continuing to the present day, uniformly state that, [redacted] (Ex. 9 at 177; Ex. 10 at 194, Ex. 11 at 212) (emphasis in original).

///

///

///

///

Pursuant to the Medical Policy on artificial discs, Blue Shield personnel have denied all requests for lumbar ADR on the basis they are investigational.[2] (Ex. 7 at 131, 136-136, 137, 138-139, 140, 142.)

Blue Shield has denied these requests in letters with standardized language stating that [redacted] (Ex. 12 at 229-230; Ex. 7 at 145-147.)

Should a member appeal a denied request, Blue Shield uses standardized language in its appeal denial letters that [redacted] (Ex. 13 at 231-233; Ex. 7 at 148.)

**D. Blue Shield makes its position on lumbar ADR known through its published Medical Policy and in its communications with physicians' offices.**

Blue Shield makes its "investigational" position on lumbar ADR well-known to the medical community and to potential lumbar ADR patients.

Blue Shield publishes its Medical Policy regarding lumbar ADR on its provider website. (Ex. 7 at 127, 128.) The purpose of putting the policy on the provider website is to enable providers to advise patients that ADR is not covered, thereby obviating the need for a formal request or claim. (Ex. 7 at 127, 128-130.)

---

[2] According to Blue Shield's policy, investigational determinations must be made by Blue Shield, not its medical groups. (Ex. 7 at 149.) As set forth below, however, Blue Shield has an admitted practice of publishing its Medical Policy on lumbar ADR on its provider website so that Blue Shield providers can discuss with their patients that lumbar ADR is considered investigational by Blue Shield in all instances and not covered.

Members also have access to the provider website and Blue Shield's Medical Policy regarding lumbar ADR. (Ex. 7 at 127.) The purpose of allowing members access to the policy is to inform them "that ADR, artificial disc replacement, is an investigational procedure[.]" (Ex. 7 at 141.)

**E. Plaintiff Luis Escalante was denied coverage for lumbar ADR pursuant to Blue Shield's established practice.**

At all relevant times, Plaintiff Luis Escalante ("Escalante") was covered under the terms of a group policy issued by Blue Shield to a private employer and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Ex. 1 at 6; Escalante Decl. at ¶ 2.)

During the course of his coverage under Blue Shield's policy, Escalante experienced degenerative disc disease at L4-L5. Escalante tried various treatments, including physical therapy and epidural injections. Despite the treatment, Escalante experienced increasingly severe back pain. (Ex. 1 at 6; Escalante Decl. at ¶ 3.)

In December of 2013, Escalante consulted with a board certified neurosurgeon, Nouzhan Sehati, M.D., regarding his back condition. (Ex. 1 at 7; Escalante Decl. at ¶ 4.) After a review of Escalante's medical history, diagnostic testing, including an MRI, and physical examination, Dr. Sehati recommended that Escalante undergo ADR surgery instead of a lumbar fusion. (Ex. 1 at 7; Escalante Decl. at ¶ 4.)

Through Dr. Sehati, Escalante then sought authorization from Blue Shield for the ADR surgery with a ProDisc-L artificial disc. (Ex. 1 at 7; Escalante Decl. at ¶ 5.) On February 6, 2014, Blue Shield denied Escalante's request for ADR surgery, stating that, [redacted] (Ex. 14.)

Blue Shield admits that the denial letter sent to Escalante was the same letter that Blue Shield sent to other members who requested lumbar ADR, and invoked the "same exclusionary language." (Ex. 7 at 150.)

Escalante appealed this decision. On March 12, 2014, Blue Shield denied the appeal, stating in relevant part:

[redacted]

(Ex. 15.)

Blue Shield admits that it did not consider "medical necessity" in denying Escalante's appeal, and that this was "in accordance with Blue Shield's standard policy and practice and procedures" in applying the investigational exclusion. (Ex. 7 at 151-152.)

In response to Blue Shield's letter denying his appeal, Escalante sent Blue Shield a letter seeking reconsideration. (Ex. 16 at 240-241.) He attached to the letter the FDA approval for the ProDisc-L artificial disc and two medical articles reporting safe and effective outcomes at the 5-year mark post-surgery for patients who underwent lumbar ADR surgery. (Ex. 16 at 242-266.)

Blue Shield admitted that it received Escalante's letter and the attached materials on March 14, 2014. (Ex. 7 at 152-154.) However, on March 26, 2014, Blue Shield sent Escalante a letter affirming its decision to deny his appeal. (Ex. 17.)

Blue Shield admits that its denial of Escalante's appeal was handled in accordance with its policies, practices and procedures and that all requests for lumbar ADR are "handled in the same way." (Ex. 7 at 155-156, 156-157.) Blue Shield further admits that, in denying in Escalante's appeal, it applied the investigational exclusion to Escalante's request for lumbar ADR as it has to all other members' requests. (Ex. 7 at 158-159.)

## III. ARGUMENT

### A. Class certification standards

Escalante seeks certification of the following class:

> All persons covered under private employer plans with Blue Shield of California who at any time from April 18, 2010 were advised or learned, or will be advised or learn in the future, that Blue Shield deems lumbar artificial disc replacement (ADR) surgery for their back conditions "investigational" and excluded from coverage.

To maintain a class action under Rule 23, the requirements of Rule 23(a) must first be established. Under Rule 23(a), a class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition to the Rule 23(a) requirements, at least one of the three subsections of Rule 23(b) must be met.

Here, Escalante is seeking to certify the proposed class under Rule 23(b)(1) and Rule 23(b)(2). As discussed in detail below, because Escalante and the class are seeking declaratory and injunctive relief (the only relief allowed under these subsections), the class certification requirements set forth in Rule 23(a) are considerably relaxed. *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (noting that a "permissive attitude is reflected by an apparent liberalized application of the Rule 23(a) prerequisites" in cases where the proposed class seeks declaratory and injunctive relief). In addition, in analyzing whether the proposed class meets class certification requirements, the court is to take the substantive allegations of the complaint as true, and may also consider extrinsic evidence submitted by the parties. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

### B. Rule 23(a) requirements

#### 1. Numerosity

The only class certification requirement challenged by Blue Shield, to date, is the requirement of numerosity. (Ex. 24 at 313-314; Ex. 23 at 307.) Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. *Moeller v. Taco Bell Corporation*, 220 F.R.D. 604, 608 (N.D. Cal. 2004). Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity. *Id. See also Bates v. United Parcel Service*, 204 F.R.D. 440, 444 (N.D. Cal. 2001).

In addition, as explained below, courts have "relaxed" the numerosity requirement in Rule 23(b)(2) cases. *See, e.g.*, *Weiss v. New York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984); *Horn*, *supra*, 555 F.2d at 275; *McMillon v. Hawaii*, 261 F.R.D. 536, 543 (D. Hawaii 2009) (finding the numerosity requirement satisfied where the putative class consisted of 10 identifiable members, as well as future, unidentified members); *Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007); *Bublitz v. E.I. Du Pont de Nemours and Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001).

Early on in the discovery process, Blue Shield produced an internally-generated chart which it has updated several times. The most recent version of the chart, attached to Plaintiff's Appendix of Exhibits as Exhibit 18, purports to show that only 19 members have had requests and/or claims for lumbar ADR denied by Blue Shield.[3] For the reasons set forth below, Blue Shield's chart does not defeat numerosity in this case.

---

[3] A denial of a request for authorization means that Blue Shield refused to pay for lumbar ADR before the fact, i.e., before the surgery is performed. The denial of a "claim" for lumbar ADR, by contrast, refers to the situation where the surgery is performed and the physician or member requests, but is refused, payment from Blue Shield after the fact. (Ex. 20 at 274-275.) Requests for authorization and claims for lumbar ADR are treated identically by Blue Shield: they are not covered pursuant to Blue Shield's categorical "investigational" exclusion. (Ex. 7 at 132-133, 134.)

**a. Blue Shield's chart lacks foundation.**

Blue Shield's chart was produced in response to Plaintiff's requests for the specific "computer data" substantiating each lumbar ADR claim denied or authorized by Blue Shield since April 18, 2010 (the beginning of the class period). (*See* Ex. 22 at 296-297.) The computer data requested was never provided. Instead, Blue Shield opted to produce an internally-generated chart purporting to list "all preauthorization requests and claims for lumbar ADR" from April 18, 2010 to the present. (*Id.*) According to Blue Shield, the total number of members who have had requests and/or claims for lumbar ADR denied by Blue Shield is 19.

The chart should be treated as nothing more than an admission that the class contains *at least* 19 members. Any contention by Blue Shield that the chart is comprehensive, i.e., that the chart definitively limits the class to 19 members and no more, should be rejected on evidentiary grounds. Indeed, aside from being non-responsive to Escalante's discovery requests, a proper foundation has never been laid for the chart.

On February 24, 2015, Plaintiff took the deposition of Leslie Crawford, the "Person Most Qualified" designated by Blue Shield to address "the number of lumbar ADR claims Blue Shield has denied at any time from April 18, 2010 to the present and the methods used to determine the number of such denials." (Ex. 20 at 271-272; Ex. 21.)

Despite the scope of Crawford's designation, and despite Blue Shield's apparent production of the chart to address the numerosity issue, Crawford was plainly unqualified to lay a proper foundation for the chart. She testified that she did not prepare the chart and admitted that the chart had been prepared by Blue Shield's lawyers. (Ex. 20 at 281.)

Consistent with this testimony, Blue Shield's counsel emphasized during deposition that Crawford "wasn't designated on the chart." (Ex. 20 at 282-283.) Blue Shield's counsel further insisted that the preparation of the chart was subject to

the work product and attorney-client privileges, because the data from which the chart was created "was pulled by the witness at our direction; at the direction of my office and also Blue Shield's legal department." (Ex. 20 at 272-273.) In other words, the chart is a document that was prepared solely for the purposes of this litigation.

"To merit judicial reliance on the contents of records, it is necessary that the proponent of particular records establish the trustworthiness of those records." *United States v. Rich*, 580 F.2d 929, 938 (9th Cir. 1978). Here, Crawford admittedly did nothing more than retrieve data under the direction of Blue Shield's counsel, which Blue Shield's counsel used to prepare the chart. Crawford, who was not designated to provide testimony on the chart, did not and could not provide any testimony establishing the "trustworthiness" of the chart, i.e., testimony that the chart or even the data used to compile it was kept in the ordinary course of business, how the data had been retained and/or stored, or any other information to establish that the methodology used in the preparation of the chart was sound and reliable.

To compound matters, Crawford admitted that Blue Shield's data sweep was limited to a single "CPT" code representing the lumbar ADR procedure. (Ex. 20 at 276.) She acknowledged that Blue Shield's medical groups may have used different codes to report requests and/or claims for lumbar ADR, and that Blue Shield's data sweep would not have captured those requests and/or claims. (Ex. 20 at 277-278, 279-280.)

In line with these admissions, Blue Shield admitted in its written discovery responses that it could not discount the "possib[ility] that a medical group did not report each and every denial of a request for lumbar ADR within the relevant period." (Ex. 23 at 307.)

In the final analysis, there is no reason to trust that Blue Shield's chart definitively captures all of Blue Shield's denials of requests and/or claims for lumbar ADR during the class period. The chart is unreliable and lacks foundation.

**b. Blue Shield's chart does not account for members who did not pursue coverage due to Blue Shield's publication of its position that lumbar ADR is not a covered service.**

A court may make "common sense assumptions" to support a finding of numerosity. *Moeller v. Taco Bell Corporation*, 220 F.R.D. 604, (N.D. Cal. 2004). *See also* 1 Robert Newberg, *Newberg on Class Actions*, § 3:3 (4th ed. 2002) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

This guidance is particularly apt where, as here, the plaintiff is seeking to certify an injunctive and declaratory relief class under Rule 23(b)(2), in order to remedy wrongful conduct or policies that the defendant has "appl[ied] generally to the class." Fed.R.Civ.P 23(b)(2).

In such cases, the full extent of the effects of the defendant's practices is often incapable of being determined with precision. Indeed, the advisory committee notes to Rule 23(b)(2) state that the section was historically designed to address "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration*." Fed.R.Civ.P. 23 advisory committee note (1966) (emphasis added). Mindful of Rule 23(b)(2)'s historical underpinnings, courts have "relaxed" the numerosity requirement in Rule 23(b)(2) cases. *See, e.g.*, *Weiss*, *supra*, 745 F.2d 786, 808 (3d Cir. 1984); *Horn*, *supra*, 555 F.2d at 275 (trial court erred in stressing "the requirement of a large number" because the "presence of the parties in the class was unimportant to the granting of injunctive relief"); *Jackson*, *supra*, 240 F.R.D. at 147; *Bublitz*, *supra*, 202 F.R.D. at 256. *See also Cypress v. Newport New General and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (proposed class of 18 members found to satisfy the numerosity requirement in racial discrimination case).

In line with a "relaxed" and "common sense" approach to numerosity, courts have rejected defendants' attempts to defeat numerosity in 23(b)(2) cases where the

defendants' own actions themselves contributed to the small number of known class members. *See Arkansas Ed. Ass'n v. Board of Ed. Of Portland, Ark. School Dist.*, 446 F.2d 763, 765-766 (8th Cir. 1971) (certifying a class of 20 employees in part because the defendant school district had adopted anti-discriminatory remedial measures that reduced the potential members of the class and lessening the chance of individual actions).

Likewise, courts have certified ostensibly smaller classes in 23(b)(2) cases where the "nature of the action" counsels in favor of finding numerosity. *See Bublitz*, *supra*, 202 F.R.D. at 255-256 (finding that 17 former employees suing their former employer for ERISA violations with respect to their severance benefits met the numerosity requirement, noting the "natural fear that comes with suing one's employer").

In this case, Blue Shield's chart artificially limits the class to 19 members who have submitted formal requests and/or claims for lumbar ADR. Common sense, however, suggests that the number of members affected by Blue Shield's refusal to cover lumbar ADR is much larger. Indeed, Blue Shield has an admitted practice of publishing its medical policy on lumbar ADR—which defines ADR as "investigational" and excludes coverage for ADR in all cases and in all circumstances—on its provider website.

The purpose of this practice is to enable providers to advise patients that ADR is not covered, thereby obviating the need for a formal request or claim. (Ex. 7 at 127, 128-130.) Members also have access to the provider website, and may make the determination that ADR is not covered for themselves (i.e., without provider input). (Ex. 7 at 127, 141.)

Given the categorical nature of Blue Shield's "investigational" exclusion, and its classwide publication to physicians and members alike, it is highly likely that many Blue Shield members did not bother to submit formal requests and/or claims for lumbar ADR. And it is easy to see why: Based on the ironclad language of Blue

Shield's medical policy, denial of any such request or claim is a foregone conclusion.

Such members, which may conservatively number in the tens and perhaps the hundreds in light of Blue Shield's massive member base, are not captured in Blue Shield's chart. But they should not be ignored in the numerosity analysis. "As a matter of common sense, the class in this case is large"—or at least significantly larger than Blue Shield is representing. *Moeller*, *supra*, 220 F.R.D. at 608. In addition, because they do not show up in any of Blue Shield's records, these members are "difficult to identify" and are very likely "geographically dispersed" throughout California. *Id*. *See also Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds in County of Los Angeles v. Jordan*, 459 U.S. 810 (1982); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996). This Court should therefore find that joinder is impracticable and that the numerosity requirement is satisfied.

**c. Even if the class were limited to members who made formal requests and/or claims for lumbar ADR, the numerosity requirement is satisfied.**

Even if Blue Shield were correct that the class is limited to the 19 members who made formal requests and/or claims for lumbar ADR, the numerosity requirement is still satisfied. In the context of a 23(b)(2) action, courts have held that a small class may satisfy the numerosity requirement where, as here, the class includes both ascertainable members and a fluid composition of future, unidentified members. *See, e.g.*, *McMillon*, *supra*, 261 F.R.D. at 543 (D. Hawaii 2009) (finding the numerosity requirement satisfied where the putative class consisted of 10 identifiable members, as well as future, unidentified members); *Jackson*, *supra*, 240 F.R.D. at 147-148 (holding that the numerosity requirement in a § 1983 action brought by death row inmates challenging Delaware's methods for lethal injection was satisfied by a class that contained only 16 members, observing that courts have relaxed the numerosity requirement in cases where injunctive and declaratory relief is

being sought, and noting that the class size might increase unpredictably as inmates were added to death row).

In this case, the class definition expressly includes class members who will be denied coverage for lumbar ADR in the future. Moreover, the class has demonstrably grown by three members during the life of this case. The first chart produced by Blue Shield in this matter reflected requests for authorization and claims made by members through May 1, 2014 and identified 16 members whose requests and/or claims for lumbar ADR had been denied by Blue Shield. (Ex. 19.) By comparison, the most recent chart produced by Blue Shield, reflecting requests for authorization and claims made by members through October 5, 2014, identifies 19 members whose requests and/or claims for lumbar ADR have been denied by Blue Shield. (Ex. 18.) Thus, in a brief five-month period, three new class members were identified. This is irrefutable proof that the size of the class is fluid, and will continue to grow steadily into the future. Under the authorities cited above, the numerosity requirement should therefore be deemed satisfied.

In addition, judicial economy favors a finding that the numerosity requirement is satisfied. *See* 1 Robert Newberg, *Newberg on Class Actions*, § 3:12 (4th ed. 2002) (relevant factors in the numerosity analysis also include "judicial economy arising from avoidance of a multiplicity of actions"). Here, certification of the proposed class would unquestionably avoid the bringing of separate actions by putative class members and would enable the court to issue a final, conclusive ruling as to all.

**2. Commonality**

Blue Shield did not seriously challenge commonality in its discovery responses. In response to Plaintiff's Request for Admissions, Blue Shield stated that it "lack[ed] knowledge or information sufficient to admit or deny" that common questions of fact and/or law exist. (Ex. 24 at 314.) Asked by Plaintiff to provide a factual basis for this response, Blue Shield responded, without elaboration, that

"additional discovery regarding the putative class members other than Plaintiff" was needed in order for it to determine whether the requirement of commonality was satisfied. (Ex. 23 at 307.)

Rule 23(a)(2) requires that there be questions of law or fact that are common to the class. Rule 23 does not require that all questions of law and fact be common to all class members. *Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008). In fact, only one question of law or fact must be common to the proposed class. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Consistent with this rule, the Ninth Circuit has held that the commonality requirement is "construed permissively," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998), that "[a]ll questions of fact and law need not be common to satisfy the rule," *id.*, and that the requirements for finding commonality under Rule 23(a)(2) are "minimal." *Id.* at 1020. And where, as here, the proposed class seeks declaratory and injunctive relief only, not monetary relief, judicial application of the commonality standard is even more forgiving. Indeed, it has been held that class actions that seek class-wide injunctive or declaratory relief, like this case, "by their very nature present common questions of law and fact." *Disability Rights Council of Greater Washington v. WMATA*, 239 F.R.D. 9, 26 (D.D.C. 2007) (quoting 7A Wright, Miller & Kane, Federal Practice and Procedure § 1763 (3d ed. 2006).

Escalante's Complaint contains two class claims under ERISA: (1) a claim for clarification of rights pursuant to 29 U.S.C § 1132(a)(1)(B) and (2) a claim for breach of fiduciary duty pursuant to 29 U.S.C § 1132(a)(3). The first claim for relief seeks a class-wide determination that Blue Shield's application of its "investigational" exclusion to lumbar ADR is improper (declaratory relief). (Ex. 1 at 7.) The second claim for relief seeks class-wide injunctive relief requiring Blue Shield to put an end to its pattern and practice of categorically denying coverage for lumbar ADR as "investigational," and to afford members who were improperly

denied lumbar ADR “a proper re-review of their requests and/or claims.” (Ex. 1 at 7-8.)

Both claims raise two, alternative common issues arising out of Blue Shield’s admitted practice of deeming all requests for lumbar ADR investigational. The first issue is whether FDA-approved services like lumbar ADR can ever be classified as “Experimental or Investigational” in light of language in Blue Shield’s EOCs which provides that “[s]ervices which require approval by the federal government or any agency thereof . . . prior to use and where such approval has not been granted at the time the services or supplies were rendered, shall be considered investigational or experimental in nature.”

This claim clearly presents a common issue because “claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action …" *Kleiner v. First Nat'l Bank of Atlanta,* 97 F.R.D. 683, 691 (N.D. Ga. 1983); *Menagerie Productions v. Citysearch*, 2009 WL 3770668 at *4 (C.D. Cal. 2009). *See also Z.D. ex rel. J.D. v. Group Health Cooperative*, 2012 WL 1977962 at *3 (court found that “whether [defendant] Group Health may deny [class members] coverage for neurodevelopmental services strictly on the basis of their age” was a common question in action seeking benefits under an ERISA plan).

The second, alternative issue is whether lumbar ADR is “recognized in accordance with generally accepted professional medical standards as being safe and effective for use in the treatment of” degenerative disc disease. Thus, even if the investigational exclusion by its terms can apply to an FDA-approved procedure, there is a common factual issue regarding whether such procedure is, indeed, investigational. This fact issue is unquestionably common, because its determination “will resolve an issue central to [Blue Shield’s liability] in one stroke.” *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). *See also Parsons*, *supra*, 754 F.3d at 681.

///

**3. Typicality**

As with commonality, Blue Shield evaded the issue of typicality in its discovery responses, claiming that it did not have "knowledge or information sufficient to admit or deny" whether Escalante's clams were typical of the claims of the class. (Ex. 24 at 315.) Asked by Plaintiff to provide a factual basis for this response, Blue Shield once again punted, claiming that "additional discovery regarding the putative class members other than Plaintiff" was needed in order for it to determine whether the requirement of typicality was satisfied. (Ex. 23 at 307-308.)

Rule 23(a)(4) requires that the claims of the named plaintiff be typical of those of the class. The purpose of the typicality requirement is to "assure[ ] that the interest of the named representatives align with those of the class." *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986). Where, as here, "the challenged conduct is a policy or practice that affects all class members," the Ninth Circuit does "not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001*), abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-505.

In this case, "the injuries [of the class members] are identical." *Armstrong*, *supra*, 275 F.3d at 869. Like Escalante, the class members have been denied, or learned of Blue Shield's categorical denial of lumbar ADR for their back conditions. This common injury springs from the "same injurious course of conduct," *id*, namely, Blue Shield's pattern and practice of categorically denying coverage for lumbar ADR surgery on the ground that it is an "investigational" service. The typicality requirement is therefore satisfied.

**4. Adequacy**

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. Resolution of two questions determines

whether this requirement is met: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

As set forth above, Escalante's interests are co-extensive and do not conflict with the proposed class members' interests, and are typical of the claims of the other class members. Plaintiff has an interest in vigorously prosecuting this case on behalf of the proposed class because he seeks to preclude Blue Shield from improperly applying its "investigational" exclusion to members' requests and/or claims for lumbar ADR surgery. (Escalante Decl. at ¶ 7.) This explicitly advances the interests of the class.

Likewise, class counsel will vigorously this action on behalf of the class. Class counsel has significant experience in insurance litigation and class litigation. (Barrio Decl. at ¶¶ 25-27.) Gianelli & Morris has successfully prosecuted numerous insurance class actions and, in particular, health insurance class actions alleging violations of statutory and/or contractual law. (Barrio Decl. at ¶¶ 25-27.)

**B. Rule 23(b) requirements.**

The next determination is whether this case fits one of the three subsections of Rule 23(b). Escalante seeks to certify the class, which is seeing equitable relief only, under subsections (b)(1) and (b)(2). As explained below, the requirements for certification under these subsections are considerably more relaxed than the requirements for certification of a money damages class under subsection (b)(3).[4]

///

///

[4] Blue Shield evaded Escalante's requests that it admit the class was properly certifiable under (b)(1) and (b)(2). Despite the fact that the language used by Escalante was lifted verbatim from Rule 23(b), Blue Shield objected on the ground that the requests for admission were "vague, ambiguous and unintelligible." (Ex. 24 at 315-316; Ex. 23 at 308.)

**1. Rule 23(b)(1)**

Rule 23(b)(1) is divided into two subsections, Rule 23(b)(1)(A) and 23(b)(1)(B). Certification is proper herein under both subsections.

First, a class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions … would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A). The phrase "incompatible standards of conduct" refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001). Certification under Rule 23(b)(1)(A), however, requires more "than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts[.]" *Id*. Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for money damages. *Id*.

The prospect of inconsistent declaratory and/or injunctive relief, however, satisfies Rule 23(b)(1)(A). *Zinser, supra,* 253 F.3d at 1193 fn. 9. That is precisely the situation here. Escalante and the class are seeking declaratory and injunctive relief in this matter that would require Blue Shield to fundamentally reform its practice of denying requests and/or claims for lumbar ADR as "investigational." Pursuit of similar claims for systemic reform through multiple individual suits would not only be inefficient, it would create a very real risk that different courts might order divergent or even conflicting relief. To avoid such a result, the class should be certified pursuant to Rule 23(b)(1)(A). *See Abramovitz v. Ahern*, 96 F.R.D. 208, 215 (D. Conn. 1982); *Robertson v. National Basketball Ass'n*, 556 F.2d 682, 685 (2d Cir. 1977) (Rule 23(b)(1) certification proper where plaintiffs sought rule changes that would impact future members).

///

Certification is also proper pursuant to Rule 23(b)(1)(B), which requires a showing that "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). ERISA requires that, where appropriate, plan provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). If this Court were to find that the terms of Blue Shield's EOCs "require[ ] Blue Shield to act in a certain fashion, ERISA would require [Blue Shield] to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Group Health Cooperative*, *supra*, 2012 WL 1977962 at *7.

**2. Rule 23(b)(2)**

A class is proper under Rule 23(b)(2) if the party opposing the class has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …" Fed.R.Civ. P. 23(b)(2). The key to certification under Rule 23(b)(2) is establishing uniform, class-wide conduct on the part of the defendant. *Parsons*, *supra*, 754 F.3d at 688. This requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class a whole." *Id*. *See also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). That inquiry does not require an examination of the validity or bases of the class members' claim for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons*, *supra*, 754 F.3d at 688.

In this case, Escalante and the class members are all seeking declaratory and injunctive relief to remedy the same conduct on the part of Blue Shield: Blue Shield's uniform practice of improperly denying all requests and/or claims for lumbar ADR—

an FDA-approved procedure—as "investigational." Blue Shield applies this categorical bar in all circumstances and to all members, regardless of the member's individual medical profile. All members were, and will be, affected by Blue Shield's policy and practice in the same way: they were/will be denied coverage for lumbar ADR. There can be no doubt, therefore, that this action "necessarily involve[s] acts that are generally applicable to the class." *Moeller*, *supra*, 220 F.R.D. at 612. *See also Arnold v. United Theatre Circuit, Inc.*, 158 F.R.D. 439, 452 (N.D. Cal. 1994) (where class members challenged defendant's failure to change certain architectural features found at its theatres, and the challenged design features affected all class members in the same way, the court determined that such a scenario "is a paradigm of the type of action for which the (b)(2) form was created"). Class certification under Rule 23(b)(2) is therefore appropriate.

**C. Implicit requirement: Ascertainability**

"Ascertainability" refers to identifiability, i.e., "that the members of a class are identifiable at the moment of certification." *Shelton v. Bledsoe*, 775 F.3d 554, 560 (3d Cir. 2015). Despite producing a chart purporting to definitively show all requests and/or claims for lumbar ADR denied by Blue Shield, Blue Shield claimed that it "lack[ed] knowledge or information sufficient to admit or deny" whether the ascertainability requirement was satisfied. (Ex. 24 at 314.)

In any event, Rule 23 does not demand ascertainability. *Id*. The requirement was created by judges to ensure that class definitions are workable where money will be distributed and class members will be provided with notice. *Id*. at 560-561. *See also Finch v. N.Y. State Office of Children & Family Servs.*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008) (holding that "[a] Rule 23(b)(2) class need not be defined as precisely as a Rule 23(b)(3) class, as Rule 23(b)(2) does not provide for monetary or individualized relief, and does not allow notice to allow class members to opt out.")

Classes certified pursuant to Rule 23(b)(1) and (b)(2), however, provide primarily injunctive or declaratory relief and do not require notice. *Shelton, supra,*

775 F.3d at 561. As a result, courts may relax or dispense entirely with the ascertainability requirement under these circumstances. *Id*. at 561-563. *See also Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004); *Marisol A. v. Guiliani*, 126 F.3d 372, 378 (2d Cir. 1997); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972).

This case does not pose any ascertainability problems. Under *Shelton*, *supra*, and the other authorities cited above, the class members do not need to be identified because the class is seeking declaratory and injunctive relief, not money damages.

## IV. CONCLUSION

For all of the foregoing reasons, Escalante respectfully requests the Court to grant the motion to certify the case as a class action under Rule 23(b)(1)A), Rule 23(b)(1)(B), and Rule 23(b)(2); to appoint Escalante as a class representative; and to appoint Escalante's counsel as class counsel.

DATED: April 20, 2015 GIANELLI & MORRIS

By: /s/ Adrian J. Barrio
ADRIAN J. BARRIO
Attorneys for Plaintiff

## DECLARATION OF ADRIAN J. BARRIO

I, Adrian J. Barrio, declare:

1. I am an attorney duly admitted to practice law before this Court. I am an associate in the firm of Gianelli & Morris, attorneys of record for the plaintiffs in this action. The following facts are within my personal knowledge and if called upon to testify I could competently do so.

2. Attached to the Appendix of Exhibits as Exhibit 1 is a true and correct copy of Plaintiff's Complaint.

3. Attached to the Appendix of Exhibits as Exhibit 2 are true and correct copies of Excerpts from Plaintiff's Administrative File. Included within the excerpts are Plaintiff's initial request for authorization of lumbar ADR surgery (through his physician Nouzhan Sehati, M.D.), Blue Shield's denial, Blue Shield's denial on appeal, Plaintiff's request for reconsideration, and Blue Shield's affirmance of its denial on appeal. Plaintiff's administrative file was produced by Blue Shield in response to Plaintiff's document production requests.

4. Attached to the Appendix of Exhibits as Exhibits 3 and 4 are true and correct copies of the internet pages for Cedars-Sinai Medical Center (Spine Center) and USC Center for Spinal Surgery. These internet pages show that these leading medical centers consider artificial disc implantation to be safe and effective in the treatment of degenerative disc disease.

5. Attached to the Appendix of Exhibits as Exhibit 5 is a true and correct copy of Blue Shield's Combined Evidence of Coverage and Disclosure Form ("EOC"), effective January 1, 2014. This exhibit was produced by Blue Shield in response to Plaintiff's document production requests and was authenticated at the deposition of Blue Shield Person Most Qualified ("PMQ") Susan Stephenson.

6. Attached to the Appendix of Exhibits as Exhibit 6 are true and correct copies of representative Blue Shield group policy EOCs. Blue Shield produced fourteen (14) such policies in response to Plaintiff's document production requests.

Plaintiff has attached two of the policies produced by Blue Shield as samples, to demonstrate that Blue Shield uses the same exclusionary language and definitions in each policy.

7. Attached to the Appendix of Exhibits as Exhibit 7 are true and correct copies of Excerpts of Transcript of the Deposition of Blue Shield PMQ Susan Stephenson, taken on February 24, 2015.

8. Attached to the Appendix of Exhibits as Exhibit 8 is a true and correct copy of Blue Shield's Medical Policy for Artificial Invertebral Disc (i.e., lumbar ADR) effective February 8, 2010. This exhibit was produced by Blue Shield in response to Plaintiff's document production requests and was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

9. Attached to the Appendix of Exhibits as Exhibit 9 is a true and correct copy of Blue Shield's Medical Policy for Spinal Fusion, effective March 5, 2012. This exhibit was produced by Blue Shield in response to Plaintiff's document production requests and was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

10. Attached to the Appendix of Exhibits as Exhibit 10 is a true and correct copy Blue Shield's Medical Policy for Artificial Invertebral Disc: Lumbar Spine. This exhibit was produced by Blue Shield in response to Plaintiff's document production requests and was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

11. Attached to the Appendix of Exhibits as Exhibit 11 is a true and correct copy of Blue Shield's Medical Policy for Spinal Fusion, effective February 22, 2013. This exhibit was produced by Blue Shield in response to Plaintiff's document production requests and was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

12. Attached to the Appendix of Exhibits as Exhibit 12 is a true and correct copy of the Form Denial Letter Regarding Investigational Services used by

Blue Shield to communicate to members that their claim for benefits has been denied on "investigational" grounds. This exhibit was produced by Blue Shield in response to Plaintiff's document production requests and was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

13. Attached to the Appendix of Exhibits as Exhibit 13 is a true and correct copy of the Appeal Form Denial Letter Regarding Investigational Services used by Blue Shield to communicate to members that their appeal for benefits has been denied on "investigational" grounds. This exhibit was produced by Blue Shield in response to Plaintiff's document production requests and was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

14. Attached to the Appendix of Exhibits as Exhibit 14 is a true and correct copy of the February 6, 2014 Denial Letter Regarding Investigational Services sent by Blue Shield to Plaintiff Luis Escalante. This exhibit was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

15. Attached to the Appendix of Exhibits as Exhibit 15 is a true and correct copy of the March 12, 2014 Appeal Denial Letter Regarding Investigational Services sent by Blue Shield to Plaintiff Luis Escalante. This exhibit was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

16. Attached to the Appendix of Exhibits as Exhibit 16 is a true and correct copy of the March 12, 2014 Reconsideration Letter sent by Plaintiff Luis Escalante to Blue Shield seeking reconsideration of Blue Shield's decision to deny his appeal. Escalante attached to the letter the FDA approval for the ProDisc-L artificial disc and two medical articles reporting safe and effective outcomes at the 5-year mark post-surgery for patients who underwent lumbar ADR surgery. These attachments are included as part of Exhibit 16. This exhibit, including attachments, was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

17. Attached to the Appendix of Exhibits as Exhibit 17 is a true and correct copy of Blue Shield's March 26, 2014 Affirmance Letter, affirming Blue

Shield's decision to deny Plaintiff's appeal. This exhibit was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

18. Attached to the Appendix of Exhibits as Exhibit 18 is a true and correct copy of the most recently updated chart produced by Blue Shield in discovery purporting to show all lumbar authorizations and claims between April 18, 2010 and October 5, 2014. This exhibit was produced by Blue Shield in response to Plaintiff's document production requests and was authenticated at the deposition of Blue Shield PMQ Susan Stephenson.

19. Attached to the Appendix of Exhibits as Exhibit 19 is a true and correct copy of the first chart produced by Blue Shield in discovery purporting to show all lumbar authorizations and claims between April 18, 2010 and May 1, 2014. This exhibit was produced by Blue Shield in response to Plaintiff's document production requests.

20. Attached to the Appendix of Exhibits as Exhibit 20 are true and correct copies of Excerpts of Transcript of the Deposition of Blue Shield PMQ Leslie Crawford, taken on February 24, 2015.

21. Attached to the Appendix of Exhibits as Exhibit 21 is a true and correct copy of Plaintiff's Second Amended Notice of Deposition of Blue Shield of California and Notice to Produce Documents at Deposition.

22. Attached to the Appendix of Exhibits as Exhibit 22 is a true and correct copy of Defendant Blue Shield of California's Supplemental Response to Plaintiff Luis Escalante's First Set of Requests for Production of Documents.

23. Attached to the Appendix of Exhibits as Exhibit 23 is a true and correct copy of Defendant Blue Shield of California's Supplemental Response to Plaintiff Luis Escalante's First Set of Interrogatories.

24. Attached to the Appendix of Exhibits as Exhibit 24 is a true and correct copy of Defendant Blue Shield of California's Response to Plaintiff Luis Escalante's First Set of Requests for Admission.

25. The law firm of Gianelli & Morris has specialized in representing aggrieved consumers in complex insurance class action and unfair business practices (Business & Professions Code section 17200) litigation for over 25 years. Mr. Gianelli, the lead attorney in this matter, has been a practicing attorney for 36 years. During this time, he has handled the investigation, preparation, trial, and appeals of numerous insurance class actions, in both state and federal courts.

26. Gianelli & Morris has been appointed class counsel in a number of significant insurance class actions, including: *Gallimore v. Kaiser Foundation Health Plan, Inc.*, Alameda Superior Court, Case No. RG12616206; *Vaccarino v. Midland National Life Ins. Co.* (C.D. Cal.) Case No. 11 CV-5858 CAS; *Arce v. Kaiser Foundation Health Plan, Inc.*, Los Angeles Superior Court, Case No. BC388689; *Bath v. Blue Shield of California*, San Luis Obispo Superior Court, Case No. CV070360; *Ticconi v. Blue Shield Life & Health Ins. Co.*, Los Angeles Superior Court, Case No. BC330989; *Peterman v. North American Co. for Life and Health*, Los Angeles Superior Court, Case No. BC357194; *Stephens v. American Equity Investment Life Insurance Company*, San Luis Obispo Superior Court, Case No. CV040965; *Iorio v. Allianz Life Ins. Co. of North America* (S.D. Cal.) Case No. 05-CV-0633 IEG; *Chastain v. Union Security Life Insurance Company* (C.D. Cal.) Case No. 06-CV-5885 ABC; and *Kavruck v. Blue Cross of California*, Los Angeles Superior Court, Case No. BC160180.

27. Gianelli & Morris has represented the insureds in a number of significant consumer law decisions, including: *Broberg v. The Guardian Life Insurance Co*. (2009) 171 Cal.App.4th 912; *Rodriguez v. Blue Cross of California* (2008) 162 Cal.App.4th 330; *Kavruck v. Blue Cross of California* (2003) 108 Cal.App.4th 773; *State Farm Mutual Auto. Ins. Co. v. Superior Court (Hill)* (2003) 114 Cal.App.4th 434; *IT Corp. v General American* (9th Cir. 1997) 107 F.3d 1415; *American States Ins. Co. v. Borbor*, (9th Cir. 1987) 826 F.2d 888; *Hansen v. Blue*

*Cross* (9th Cir. 1989) 891 F.2d 1384; and *Allstate v. Overton* (1984) 160 Cal.App.3d 84.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed this 20th day of April 2015 in Los Angeles, California.

______________________________
Adrian J. Barrio