ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, California 90071
Tel: (213) 489-1600; Fax: (213) 489-1611

Attorneys for Plaintiff
LUIS ESCALANTE, on behalf of himself and
all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ESCALANTE, on behalf of himself and all others similarly situated, <br><br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA PHYSICIANS' SERVICE, dba BLUE SHIELD OF CALIFORNIA, <br><br> Defendant | CASE NO. 2:14-CV-3021 DDP-PJWx <br> <u>Assigned to Honorable Dean D. Pregerson</u> <br><br> **PLAINTIFF LUIS ESCALANTE'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> **DATE:      June 22, 2015** <br> **TIME:      10:00 a.m.** <br> **LOCATION: Courtroom 3** |

# TABLE OF CONTENTS

*PAGES*

I.    INTRODUCTION ................................................................ 1

II.   ARGUMENT ..................................................................... 2

      A.    Numerosity ............................................................ 2

            1.   Blue Shield has failed to prove there are only 19 class
                 members and its withholding of the relevant data
                 should result in an inference that Escalante has
                 established the numerosity element ................................ 2

            2.   Blue Shield's practice of discouraging requests for
                 lumbar ADR is competent evidence of the fact that
                 the class size well exceeds 19 .................................... 6

            3.   A class size of 19 is sufficient to meet the relaxed
                 numerosity standard applicable in Rule 23(b)(2) cases ........ 8

            4.   Analysis of the remaining factors establishes that
                 joinder would be impracticable ................................... 11

      B.    Commonality .......................................................... 14

      C.    Typicality ............................................................. 18

      D.    Adequacy of Representation ........................................ 20

      E.    Ascertainability/Cohesiveness ..................................... 21

            1.   Ascertainability is a non-issue in the context of a Rule
                 23(b)(1) or (b)(2) class action .................................. 21

            2.   The proposed class is cohesive ................................. 22

III.  CONCLUSION ................................................................ 23

i

# TABLE OF AUTHORITIES

*Cases*                                                                                    *Pages*

*A.F. ex rel Legaard v. Providence Health Plan* .............................. 16, 17, 19, 20, 22
    300 F.R.D. 474 (D. Or. 2013)

*Advanced Rehab.,LLC v. UnitedHealthGroup, Inc.* ............................... 15
    498 F. App'X 173 (3d Cir. 2012)

*Alonzo v. Maximus, Inc.* .......................................................... 5
    275 F.R.D. 513 (C.D. Cal. 2011)

*Amchem Products, Inc. v. Windsor* ............................................. 2
    521 U.S. 591 (1997)

*Anand v. BP West Coast Prods. LLC* ............................................ 3
    484 F.Supp.2d 1086 (C.D. Cal. 2007)

*Arkansas Ed. Ass'n v. Board of Ed. of Portland, Ark. School Dist.* ............ 8, 9
    446 F.2d 763 (8th Cir. 1971)

*Berger v. Xerox Corp. Retirement Income Guarantee Plan* ..................... 13
    338 F.3d 755 (7th Cir. 2003)

*Borunda v. Richmond* ........................................................... 3
    885 F.2d 1384 (9th Cir. 1988)

*Bradford v. AGCO Corp.* ........................................................ 12
    187 F.R.D. 600 (W.D. Mo. 1999)

*Bruce v. Christian* ............................................................. 10
    113 F.R.D. 554 (S.D.N.Y. 1986)

*Bublitz v. E.I. DuPont de Nemours and Co.* .................................. 7, 9, 10
    202 F.R.D. 251 (S.D. Iowa 2001)

*Californians for Disability Rights, Inc., et al. v. California
Department of Transportation* .................................................. 6, 10
    249 F.R.D. 334 (N.D. Cal. 2008)

*Cent. Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC* .......................................................................... 19
    433 F.3d 181 (2d Cir. 2005)

*Coates v. Johnson & Johnson* .......................................................... 4
    756 F.2d 524 (7th Cir. 1985)

*Colon-Fontanez v. Municipality of San Juan* .................................. 4
    660 F.3d 17 (1st Cir. 2011)

*County of Los Angeles v. Jordan* ................................................... 11
    459 U.S. 810 (1982)

*Cross v. National Trust Life Ins. Co.* ............................................. 9
    553 F.2d 1026 (6th Cir. 1977)

*Cypress v. Newport New General and Nonsectarian Hosp. Ass'n*, ..... 9
    375 F.2d 648 (4th Cir. 1967)

*Daniel F. v. Blue Shield of California a* ......................................... 22
    305 F.R.D. 115 (N.D. Cal. 2014)

*Gooch v. Life investors Insurance Co. of America* ......................... 16
    672 F.3d 402 (6th Cir. 2012)

*Grant v. Sulivan* ........................................................................... 10
    131 F.R.D. 436 (M.D. Pa. 1990)

*Harlick v. Blue Shield of California* ............................................... 17
    686 F.3d 699 (9th Cir. 2012)

*Holak v. Kmart Corp.*, No. 12-00304 ............................................. 9
    2014 WL 2565902 (E.D. Cal. June 6, 2014)

*Horn v. Associated Wholesale Grocers, Inc.* ............................ 2, 7, 9
    555 F.2d 270 (10th Cir. 1977)

*Horvath v. Keystone Health Plan E., Inc.* ...................................... 19
    333 F.3d 450 (3d Cir. 2003)

*In re Initial Public Offerings Securities Litigation (Miles)* .......................... 5
    471 F.3d 24 (2d Cir. 2006)

*Jackson v. Danberg* .......................................................................... 9, 10
    240 F.R.D. 145 (D. Del. 2007)

*Jordan v. County of Los Angeles* ....................................................... 11
    669 F.2d 1311 (9th Cir. 1982)

*Kennedy v. Allied Mutual Ins. Co.* ...................................................... 5
    952 F.2d 262 (9th Cir. 1991)

*Kolio v. Hawaii* ................................................................................ 11
    No. 11-00266, 2012 WL 4472255 (D. Hawaii 2012)

*Larson v. Northrop Corp.* .................................................................. 19
    21 F.3d 1164 (D.C. Cir. 1994)

*Maljack Productions, Inc. v. GoodTimes Home Video Corp.* ................. 3
    81 F.3d 881 (9th Cir. 1996)

*Manning v. Princeton Consumer Discount Co., Inc.* ............................ 11
    666 F.3d 581(9th Cir. 2012)

*Mazza v. Am. Honda Motor Co.* .......................................................... 15
    390 F.Supp. 320 (E.D. Pa. 1975)

*McMillon v. Hawaii* ......................................................................... 10
    261 F.R.D. 543 (D. Hawaii 2009)

*Moeller v. Taco Bell Corporation* ..................................................... 7, 12
    220 F.R.D. 604 (N.D. Cal. 2004)

*Parsons v. Ryan* ......................................................................... 15, 19, 20
    754 F.3d 657 (9th Cir. 2014)

*Rodriguez v. Hayes* ................................................................... *passim*
    591 F.3d 1105 (9th Cir. 2009)

*Romberio v. Unumprovident Corp.* ..................................................... 20
    385 Fed.Appx. 423 (6th Cir. 2009)

*UAW v. NLRB* ................................................................................................ 6
    459 F.2d 1329 (D.C. Cir. 1972)

*United States v. Johnson* ............................................................................... 3
    549 F.2d 1253 (9th Cir. 1979)

*United States v. Latimer* ............................................................................... 6
    511 F.2d 498 (10th Cir. 1975)

*United States v. Thompson* ........................................................................... 6
    37 F.3d 450 (9th Cir. 1994)

*Weiss v. New York Hospital* .......................................................................... 9
    745 F.2d 786 (3d Cir. 1984)

*Walters v. Reno* ........................................................................................ 13, 14
    145 F.3d 1032 (9th Cir. 1997)

*Z.D. ex rel. J.D. v. Group Health Cooperative* ......................................... 16
    2012 WL 1977962 (W.D. Wash. June 1, 2012)

***Statutes***

Federal Rules of Civil Procedure
    Rule 23................................................................................*passim*

## I.    INTRODUCTION

Blue Shield does not dispute that it has developed and used internal guidelines and policies which provide that lumbar ADR is considered "investigational" in all circumstances. Nor does it dispute that, pursuant to these guidelines and policies, it has systematically denied all requests for lumbar ADR as investigational—despite the fact that lumbar ADR is FDA-approved and has proven to be a safe, effective and often recommended procedure for treating lumbar disc disease. Finally, Blue Shield does not dispute that it denied Escalante's request for lumbar ADR pursuant to its "investigational" exclusion, without regard to medical need, and that it treated Escalante's claim the same way it treats all other claims for lumbar ADR.

Given the categorical nature of its policy treating lumbar ADR as "investigational" in all circumstances, and the general applicability of that policy to all class members (including Escalante), Blue Shield focuses on the element of numerosity and attempts to convince this Court that there are "at most" 19 members in the proposed class. (Opp. at p. 9.) But this contention cannot be accepted. First, there is no competent evidence to support it. Blue Shield withheld the relevant data regarding the number of its denials of requests for lumbar ADR, and the "chart" produced by Blue Shield in place of the data is inadmissible and lacks foundation. Blue Shield attempts to bury this issue in a footnote, but it cannot be so easily evaded.

Second, Blue Shield's data sweep admittedly captured only denials of formal requests for lumbar ADR, and did not account for members who did not pursue coverage due to Blue Shield's publication of its position that lumbar ADR is never a covered service. The existence of such individuals is not speculative; it is grounded in Blue Shield's publication of its medical policy on lumbar ADR, the admitted purposes of this practice, and the logical effect of this practice in reducing the class size.

///

1

Finally, even if the class were limited to members who made formal requests and/or claims for lumbar ADR, Blue Shield admits that the number of these individuals is growing. And even if it were not, 19 falls comfortably within the range of class sizes that have been approved for certification under the "relaxed" numerosity standard applicable in cases where, as here, the proposed class seeks primarily declaratory and injunctive relief.

## II.   ARGUMENT

Blue Shield does not dispute that the proposed class meets the Rule 23(b) requirements, i.e., the requirements of Rule 23(b)(1)(A), (b)(1)(B), and (b)(2). Blue Shield's entire focus is on the Rule 23(a) requirements.

Where, as here, the proposed class seeks declaratory and injunctive relief, not monetary damages, the Rule 23(a) requirements are given a "liberalized application[.]" *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977).[1]

### A.   Numerosity

**1.   Blue Shield has failed to prove there are only 19 class members and its withholding of the relevant data should result in an inference that Escalante has established the numerosity element.**

Blue Shield argues that its chart, and the declarations of its witnesses, establish that, at most, there are 19 putative class members. Blue Shield's evidence, however, is not competent for that proposition. Although Blue Shield's offer will serve as an admission that there are at least 19 formal denials, Blue Shield's failure

---

[1] Blue Shield's attempt to dismiss *Horn* as a civil rights case is unpersuasive. *Horn* was based on Rule 23(b)(2). "Subdivision (b)(2) is not limited to civil rights cases." Fed.R.Civ.P. 23 advisory committee note (1966). *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (stating that "subdivision (b)(2) 'builds on experience mainly, but not exclusively, in the civil rights field'") (*quoting* Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 84 L.Rev. 356, 375-400 (1967)).

to produce the relevant data, evidence in its exclusive control, creates an inference that the numerosity element has been established.

Blue Shield's evidence serves as an admission that there are at least 19 individuals who were denied lumbar ADR. The production of documents by a party in response to a discovery request operates as an admission by that party. *Anand v. BP West Coast Prods. LLC*, 484 F.Supp.2d 1086, 1092 fn. 11 (C.D. Cal. 2007) ("Documents produced in response to discovery requests are admissible … and constitute the admissions of a party opponent."). The chart was produced in response to Escalante's discovery requests and is therefore an admission. *Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 fn. 12 (9th Cir. 1996) (rejecting party's evidentiary challenge to documents that it produced in discovery). This is so even though Escalante objects to the chart for the proposition asserted by Blue Shield. The same piece of evidence may be admitted for one purpose but not for another. *See* FRE 105; *Borunda v. Richmond*, 885 F.2d 1384, 1388 (9th Cir. 1988).

As the party seeking admission of the chart for the specific purpose of showing that the class contains 19 members and no more, Blue Shield bears the burden of proving that the chart meets admissibility and foundational requirements. *United States v. Johnson*, 549 F.2d 1253, 1257 (9th Cir. 1979) (the proponent of summary evidence such as a chart must demonstrate "the admissibility of the underlying writings or records summarized, as a condition precedent to introduction of the summary into evidence").

Blue Shield has failed to meet its burden in this regard. First, as pointed out in the moving papers, Blue Shield failed to turn over the underlying computer data on which the chart is based, despite the fact that this information was specifically requested by Escalante. On this basis alone, the chart is inadmissible to prove that the class is limited to 19 members. Disclosure of the underlying data on which the chart is based is a necessary precondition for admissibility. *See* FRE 1006 ("The

originals [of the contents of the summary evidence], or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place); *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 30 (1st Cir. 2011); *Coates v. Johnson & Johnson*, 756 F.2d 524, 550 (7th Cir. 1985).

Second, Blue Shield has presented no evidence that the underlying data or materials on which the chart is based are independently admissible as business records of all Blue Shield's denials of requests for lumbar ADR in the relevant time period. In fact, no evidence of Blue Shield's recordkeeping practices with respect to denials of requests for lumbar ADR has been presented, much less evidence that such recordkeeping practices are part of Blue Shield's "regularly conducted business" and that ***all denials*** of requests for lumbar ADR were recorded "according to a regular procedure, and for a routine business purpose." *Colon-Fontanez*, *supra*, 660 F.3d 17 at 30.

Third, an adequate foundation has not been laid for the chart. In the context of a summary exhibit, the proponent of the exhibit "should present the testimony of the witness who supervised its preparation." *Colon-Fontanez*, *supra*, 660 F.3d 17, 31 (1st Cir. 2011) (*quoting United States v. Bray*, 139 F.3d 1104, 1110) (6th Cir. 1998)). Blue Shield has not done this. Leslie Crawford, Blue Shield's Rule 30(b)(6) witness, testified that she did not prepare the chart and that the chart was prepared by Blue Shield's lawyers. (Plaintiff's Ex. 20 at 281.) Ms. Crawford did not supervise the chart's preparation. On the contrary, at all times, Ms. Crawford performed "at

///

///

///

the direction of" Blue Shield's lawyers. (*Id.* at 272-273.) There is no getting around this testimony.[2]

For all of these reasons, the chart is inadmissible to establish that the class consists of 19 members "at most," and this Court should so find.[3]

Additionally, the fact that Blue Shield is in exclusive control of the data relating to the number of formal denials, and has withheld that data while proffering a lawyer-created chart, should result in an inference being drawn that Escalante has satisfied the numerosity element.

On certification, a court assesses the relevant extrinsic evidence offered and decides whether it tends to prove a particular class element. *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011). *See also in re Initial Public Offerings Securities Litigation (Miles)*, 471 F.3d 24, 42 (2d Cir. 2006) ("A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit.").

Here, Blue Shield has decided to use a summary chart without providing the relevant data—or providing any foundational facts establishing that what is on the

---

[2] Blue Shield's assertion that "Ms. Crawford gathered the underlying data, reviewed the chart for accuracy before production, approved it, and verified its contents under oath," (Opposition at p. 10, fn. 7), does not establish that she prepared the chart or even supervised its preparation. To the extent Ms. Crawford's "new" declaration is intended to establish these facts, it should be disregarded as inconsistent with Ms. Crawford's prior deposition testimony under the "sham affidavit" rule. *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

[3] Rather than address the core evidentiary and foundational issues plaguing the chart, Blue Shield focuses on parsing its witnesses' testimony regarding the non-reporting of denials by its medical groups. Nowhere, however, does Blue Shield provide an explanation for its cryptic assertion, made in response to Escalante's discovery, that it cannot discount the "possib[ility] that a medical group did not report each and every denial of a request for lumbar ADR within the relevant period." (Plaintiff's Ex. 23 at 307.)

chart was taken from sources that would necessarily capture all the formal denials Blue Shield has made for lumbar ADR during the relevant time period. Blue Shield has thus withheld the evidence of the total number of its formal denials.

Under the adverse inference rule, "when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." *UAW v. NLRB*, 459 F.2d 1329, 1339 (D.C. Cir. 1972); *United States v. Thompson*, 37 F.3d 450, 453, fn. 3 (9th Cir. 1994) citing *United States v. Latimer*, 511 F.2d 498, 502-503 (10th Cir. 1975).

On the basis of the adverse inference rule and Blue Shield's exclusive dominion and control over the evidence, this Court can and should infer that the underlying computer data that Blue Shield has refused to produce is harmful to Blue Shield—i.e., that the withheld computer data discloses a sufficient class size for the Rule 23(b)(1) and (b)(2) classes Escalante seeks to certify.

### 2. Blue Shield's practice of discouraging requests for lumbar ADR is competent evidence of the fact that the class size well exceeds 19.

Evidentiary issues aside, the fundamental problem with Blue Shield's chart is that it captures only denials of formal requests for lumbar ADR, and does not account for members who did not pursue coverage due to Blue Shield's publication of its position that lumbar ADR is never a covered service. Adding these unidentified members—which, given Blue Shield's state-wide, massive member base, are likely significant in number—to the 19 Blue Shield admits to would easily yield a number above 40. *Californians for Disability Rights, Inc., et al. v. California Department of Transportation*, 249 F.R.D. 334, 347 (N.D. Cal. 2008)("Here, there is no real question that there are *at least* 22 class members, and, extrapolating from the statistical data presented by plaintiffs, common sense dictates that there are thousands—if not hundreds of thousands—more.").

Blue Shield asserts that Escalante "has offered no nonspeculative evidence that any [unidentified] members actually exist[.]" (Opp. at p. 12.) This is wrong.

6

Escalante submitted direct evidence, in the form of deposition testimony from Blue Shield's Rule 30(b)(6) witness, Sue Stephenson, that Blue Shield publicizes its medical policy on lumbar ADR on its provider website *in order to enable providers to advise patients that ADR is not covered.* (Plaintiff's Ex. 7 at 127, 128-130.) Members also have access to the provider website, and may make the determination that ADR is not covered for themselves (i.e., without provider input). (*Id.* at 127, 141.) There is no "speculation" here—Blue Shield has an admitted practice of publishing its medical policy on lumbar ADR for access by providers and members, the practical effect of which is to discourage or reduce requests for lumbar ADR.

The Court may reasonably infer from Blue Shield's admissions that the class is sufficiently large to satisfy the numerosity requirement. Indeed, on the basis of "common sense assumptions," *Moeller v. Taco Bell Corporation*, 220 F.R.D. 604, 608 (N.D. Cal. 2004), courts have drawn the necessary inference of numerosity from far less substantial evidence in the context of a Rule 23(b)(2) class action. In *Horn*, for example, an employment discrimination action, the Tenth Circuit chided the district court for employing a strict numerical approach and took "judicial notice that employees are apprehensive concerning loss of jobs and the welfare of their families" in concluding that the numerosity requirement was satisfied. *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977). *See also Bublitz v. E.I. DuPont de Nemours and Co.*, 202 F.R.D. 251, 255-256 (S.D. Iowa 2001) (finding that 17 former employees suing their former employer for ERISA violations with respect to their severance benefits met the numerosity requirement, noting the "natural fear that comes with suing one's employer").

If a court can assume (and take judicial notice of the fact) that employees are reluctant to sue their employers, then it may certainly assume that patients with disabling back pain would be discouraged from pursuing a lengthy and futile request protocol for lumbar ADR after being advised it will not be covered. This assumption is not being pulled "out of thin air," as Blue Shield claims; rather, it is rooted in Blue

Shield's publication of its medical policy on lumbar ADR and the logical effect of this practice in reducing the class size. *See Arkansas Ed. Ass'n v. Board of Ed. Of Portland, Ark. School Dist.*, 446 F.2d 763, 765-766 (8th Cir. 1971) (certifying a class of 20 employees in part because the defendant school district had adopted anti-discriminatory remedial measures that reduced the potential members of the class). By contrast, the cases cited by Blue Shield do not involve direct evidence of conduct by the defendant that contributed to the small number of known class members, and are distinguishable on this basis. (Opp. at p. 13, fn. 9.)

Blue Shield's fallback argument that "most people contemplating lumbar ADR surgery [would] not be so easily dissuaded from seeking coverage for the costly procedure" is itself unsupported, speculative and contradicted by common sense. Blue Shield published its position on lumbar ADR on its provider website **with the intention** of having providers inform members that lumbar ADR is not covered. (Plaintiff's Ex. 7 at 127, 128-130.) Blue Shield cannot escape this admission nor its own reasonable conclusion that members would forego pursuing formal requests when told their actions would be futile.

Blue Shield's argument also assumes that Escalante is required to show that unidentified class members suffered a specific and common injury, i.e., that they "had lumbar ADR surgery … and paid for it themselves." (Opp. at p. 12.) There is no basis for this assumption. In a Rule 23(b)(2) action, the focus is on the defendant's policies, practices and procedures. The policy under attack must be "uniform" and "applicable to all class members," *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2009), but the law recognizes that the harm suffered by the individual class members in these cases can and often will vary widely. For this reason, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id.* Blue Shield's attempt to show that unidentified

class members do not exist or exist in small numbers should therefore be rejected, as it is based on an assumption that is inapplicable to a Rule 23(b)(2) class.

### 3.   A class size of 19 is sufficient to meet the relaxed numerosity standard applicable in Rule 23(b)(2) cases.

As pointed out in the moving papers, even if Blue Shield were correct that the class is limited to the 19 members who made formal requests and/or claims for lumbar ADR, the numerosity requirement is still satisfied under the "relaxed" numerosity standard applicable to Rule 23(b)(2) class actions. Blue Shield's argument that "no cases hold that the numerosity requirement should be relaxed in all injunctive relief cases" is not only wrong, it overwhelmingly relies on Rule 23(b)(3) cases, i.e., cases in which the putative class sought monetary relief. *See generally Holak v. Kmart Corp.*, No. 12-00304, 2014 WL 2565902 (E.D. Cal. June 6, 2014) and cases cited at p. 9, fn. 6 of Blue Shield's Opposition.

Contrary to Blue Shield's suggestion, the cases uniformly hold that "courts have relaxed the numerosity requirement when the plaintiffs seek certification pursuant to Rule 23(b)(2)." *Bublitz, supra*, 202 F.R.D. at 256. *See also Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007). The reason for this is that "the presence of the parties in the class [is] unimportant to the granting of injunctive relief." *Horn, supra*, 555 F.2d at 275. Likewise, a "rigorous application of the numerosity requirement" is inappropriate with respect to claims for declaratory relief because "[a] judicial determination that a particular practice infringes upon protected rights and is therefore invalid will prevent its application by the defendant against many persons not before the court." *Weiss v. New York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984).

Blue Shield has no argument for, and cannot deny, the steady stream of Rule 23(b)(2) cases—dating as far back as 1967 and continuing to the present—in which courts have certified classes numbering far below 40. *Arkansas Ed. Ass'n, supra*, 446 F.2d at 765-766 (20 class members); *Cross v. National Trust Life Ins. Co.*, 553

F.2d 1026, 1030 (6th Cir. 1977) (7 class members); *Cypress v. Newport New General and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members); *McMillon v. Hawaii*, 261 F.R.D. 536, 543 (D. Hawaii 2009) (10 class members); *Jackson*, *supra*, 240 F.R.D. at 147 (16 class members); *Bublitz*, *supra*, 202 F.R.D. at 256 (17 class members); *Californians for Disability Rights, Inc.*, *supra*, 249 F.R.D. at 347 (22 class members); *Manning v. Princeton Consumer Discount Co., Inc.*, 390 F.Supp. 320, 324 (E.D. Pa. 1975) (14 class members); *Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (16 class members). *See also Grant v. Sulivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (noting that "[t]his court may certify a class even if it is composed of as few as 14 members"). The 19 class members identified in Blue Shield's chart fall comfortably within this numerical range.

Moreover, Blue Shield does not and cannot dispute that the number of identified class members increased by three in a brief five-month window during the discovery process. Indeed, Blue Shield itself produced the documentary evidence that substantiates the growth of the class. (*Compare* Plaintiff's Ex. 19 [16 members] *with* Ex. 2 to Crawford Decl. [19 members].) The admitted and rapid growth of the class provides a credible, evidentiary basis for the existence of *future* unidentified class members. Put another way, it assures that the number of people affected by Blue Shield's wrongful application of its "investigational" exclusion to requests for lumbar ADR will increase steadily into the future, making this case a particularly good candidate for certification. *McMillon*, *supra*, 261 F.R.D. at 543; *Jackson*, *supra*, 240 F.R.D. at 147; *Bruce*, *supra*, 113 F.R.D. at 557.

Blue Shield's only response to Escalante's uncontroverted evidence of future growth is to claim that it does not exist. It attempts to distinguish *McMillon*—which certified a class of only 10 identifiable members—on the ground that the plaintiff in *McMillon* produced "concrete evidence … of future members." (Opp. at p. 13) But

Escalante has done the same here. The charts are "concrete evidence"—they were produced by Blue Shield in response to Escalante's discovery requests.

For the same reason, Blue Shield's reliance on *Kolio v. Hawaii*, No. 11-00266, 2012 WL 4472255 (D. Hawaii 2012) is misplaced. In *Kolio*, the plaintiffs did not "conduct[ ] any discovery or fact investigation to support their allegations regarding numerosity." *Id.* at *3. The court denied class certification on numerosity grounds because plaintiffs provided only "unsubstantiated general statistical data" that was "12 years [old] and supported only by counsel's declaration." *Id.* By contrast, here, Escalante has produced current and viable evidence, in the form of Blue Shield's admissions in discovery, that the class size is fluid and likely to grow into the future.

### 4.   Analysis of the remaining factors establishes that joinder would be impracticable.

The remaining factors in the "impracticability of joinder" analysis weigh in Escalante's favor and support certification of the proposed class. First, many (if not most) of the Blue Shield members affected by Blue Shield's uniform policy of excluding claims for lumbar ADR as "investigational" cannot be identified. As noted, an untold (and likely very large) number of Blue Shield members did not pursue coverage due to Blue Shield's publication of its medical policy on lumbar ADR. Because these members did not submit formal requests for lumbar ADR, they are not reflected in Blue Shield's records.

In addition, the proposed class consists of future, unidentified members: members who will either have their requests for lumbar ADR formally denied by Blue Shield in the future or who will decide not to pursue coverage for lumbar ADR due to Blue Shield's publication of its medical policy on lumbar ADR. "The joinder of unknown individuals is inherently impracticable." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds in County of Los Angeles v. Jordan*, 459 U.S. 810 (1982).

Second, because the proposed class is defined to include all Blue Shield members in California, class members are likely to be geographically dispersed throughout the state of California. Blue Shield's apparent contention that class members must be dispersed across multiple states to support a finding that joinder is impracticable is a non-starter. *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) ("The fact that the plaintiffs are all located in the same state does not defeat certification. Having all the plaintiffs in close proximity makes the possibility of separate trials even more distasteful.") Moreover, in *Moeller*, *supra*, the court certified a class geographically dispersed within California that "stretch[ed] from San Diego to Napa[.]" *Moeller*, *supra*, 220 F.R.D. at 608. The proposed class in this case is even more geographically dispersed, stretching across the entire state.

Third, Blue Shield's contention that "class members have the ability and incentive to bring individual claims" is based on a Rule 23(b)(3) case and misses the mark in the context of a Rule 23(b)(2) class action. Once again, Blue Shield wrongly assumes that each class member suffered the same harm and has the same incentive to bring an individual action. In the context of a Rule 23(b)(2) case, however, the harm suffered by the class members will often vary widely, and in some cases the class members will not have suffered any harm at all. *Rodriguez*, *supra*, 591 F.3d at 1125. As a result, the incentives of class members to bring individual lawsuits will necessarily vary. To require Escalante to show that "class members have the ability and incentive to bring individual claims" would undermine the core principles animating Rule 23(b)(2).

In any event, Blue Shield's argument reflects a naïvete regarding the economics of insurance coverage litigation. It is premised on the assumption that class members could feasibly find an insurance coverage attorney willing to invest enormous amounts of time, effort, and money (experts on the safety and efficacy of lumbar ADR) on an individual claim Blue Shield values at no more than $35,000-$45,000. This is the cost of one expert. Blue Shield's assumption is not in tune with

common sense or the realities of the market. And the proof is in the pudding: Blue Shield has not identified a single case brought by an individual contesting its lumbar ADR position.

Fourth, and finally, judicial economy weighs in favor of class treatment. Certification of the proposed class would obviate the need for individual actions challenging Blue Shield's uniform practice of denying requests for lumbar ADR as "investigational," and would minimize the risk of inconsistent results. Blue Shield stubbornly insists that "judicial economy is not served" because "the number of putative class members is small" and "joinder is practicable," (Opp. at p. 16), but this argument ignores the unidentified class members who did not pursue coverage due to Blue Shield's publication of its medical policy on lumbar ADR in addition to future, unidentified class members.

Blue Shield also claims that class certification will not serve judicial economy because, with respect to Escalante's claim for declaratory relief, "individual members [will] have to bring their own separate lawsuits to recover any benefits that may be due on an individual basis." (Opp. at p. 17.) Apparently, Blue Shield is asserting it would disregard an order determining that its categorical denial is improper. Such an assumption cannot be made. In any event, "a declaratory judgment is **normally** a prelude to a request for other relief, whether injunctive or monetary." *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) (emphasis in original). This is because "[n]o one wants an empty declaration." *Id*. at 764. "As long as the concrete follow-on relief that is envisaged will if ordered … be the direct, anticipated consequence of the declaration, rather than something unrelated to it, the suit can be maintained under Rule 23(b)(2)." *Id*.

///

///

///

Moreover, in *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1997), a Rule 23(b)(2) case, the Ninth Circuit rejected this same type of "judicial economy" argument:

> While the government correctly observes that numerous individual administrative proceedings may flow from the district court's decision [to grant equitable relief], it fails to acknowledge that the district court's decision eliminates the need for individual litigation regarding the constitutionality of INS's official forms and procedures. Absent a class action decision, individual aliens across the country could file complaints against the INS in federal court, raising precisely the same legal challenge to the constitutionality of the § 274C forms. Contrary to the government's assertion, therefore, class certification is entirely proper in light of the general purposes of Rule 23, avoiding duplicative litigation.

*Id.* at 1047.

Here, like the defendant in *Walters*, Blue Shield "fails to acknowledge" that certification of the proposed class will eliminate the need for individual litigation regarding the legality of Blue Shield's uniform practice of denying requests for lumbar ADR as "investigational." *Id.* Blue Shield's "judicial economy" argument should therefore be rejected.

### B.   Commonality

Escalante identified two issues common to the proposed class in his moving papers: (1) whether FDA-approved services can ever be classified as "Experimental or Investigational" under the language of Blue Shield's exclusion, and (2) whether lumbar ADR is, in fact, a safe and effective treatment for degenerative disc disease. (Mot. Class Cert. at p. 17.)

Blue Shield does not dispute that the issues identified by Escalante in his moving papers are common to the class. Instead, Blue Shield makes two arguments relating to *additional* issues that purportedly "may not result in an answer generally applicable to the class." (Opp. at p. 18.)

Blue Shield's first argument is that even if it is determined that its categorical denial of lumbar ADR as investigational is wrong, the procedure may nevertheless be investigational given a person's medical profile. In support of this proposition,

Blue Shield cites the opinion of its Dr. Allen, that "[a] procedure may be considered investigational for some indications but not others."[4] (Allen Decl., ¶ 11.) Blue Shield's second argument is that, if the class is certified and successful, but Blue Shield determines on subsequent review that lumbar ADR is not "medically necessary" for a given class member, a potential follow-up individual action by that member may be time barred.

Both arguments misstate the substance of Rule 23(a)(2) and the analysis to be performed in assessing whether there is a common issue in a Rule 23(b)(1) or (b)(2) class. Plaintiff is only required to show the existence of one common issue relative to the Rule 23(b)(1) and (b)(2) classes he seeks to certify. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). Plaintiff is *not* required to show "that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test[.]" *Parsons*, *supra*, 754 F.3d at 688. *See also Mazza*, *supra*, 666 F.3d at 589 ("Even assuming arguendo that we were to agree with Honda's 'crucial question' contention, the individualized issues raised go to preponderance under Rule 23(b)(3), not to whether there are common issues under Rule 23(a)(2).")[5]

---

[4] Blue Shield did not disclose its witness, Dr. Allen, in its disclosures nor the "facts" he proffers in its discovery responses. Blue Shield clearly had possession and control of the opinion of its employee, Dr. Allen, on this issue and simply withheld it. For this reason and the reasons amplified more fully in Escalante's Objections to Evidence at pp. 7-12, Dr. Allen's declaration should be excluded in its entirety.

[5] Blue Shield's case of *Advanced Rehab.,LLC v. UnitedHealthGroup, Inc.*, 498 F. App'X 173 (3d Cir. 2012) is not a class certification case but a pleading case upholding a dismissal based upon the plaintiffs' failure to plead that a controversial "manipulation under anesthesia" treatment was not experimental or medically necessary. It does not address the "commonality" requirement for a Rule 23(b)(1) or (b)(2) class, much less the binding Ninth Circuit authority cited above.

As set forth above, this case indisputably raises two common issues relating to the propriety of Blue Shield's categorical denial of lumbar ADR for the class Plaintiff seeks to certify under Rule 23(b)(1) and (b)(2). No more is required to satisfy the commonality requirement, regardless of how many individual defenses Blue Shield wishes to assert. *Gooch v. Life investors Insurance Co. of America*, 672 F.3d 402, 428 (6th Cir. 2012) (finding "Rule 23(b)(2) certification appropriate" despite the fact that "not every class member will have a claim for damages" because "the declaratory judgment will apply to a uniform interpretation of a contract that governs or governed each class member"); *A.F. ex rel Legaard v. Providence Health Plan*, 300 F.R.D. 474, 481 (D. Or. 2013) (commonality found for Rule 23(b)(2) class because, regardless of insurer's ability to raise other defenses, "all class members have in common the issue of whether the Developmental Disabilities Exclusion" was enforceable under law, ); *Z.D. ex rel. J.D. v. Group Health Cooperative*, 2012 WL 1977962 at *8 (W.D. Wash. June 1, 2012) (common issue under Rule 23(b)(1) and (b)(2) regarding legality of health plan's application of age-based limitation for treatment of autistic children despite defendant's raising of individual defenses).

Although the Court's analysis can stop there, in fact, Blue Shield cannot even show that the defenses it raises are viable as to the putative class members.

First, whether Blue Shield would or could raise "individual" investigational issues in the event its categorical denial is proven wrong goes to the question of individual class members' ultimate entitlement to lumbar ADR. This question is misplaced in the context of a Rule 23(b)(2) action, where the focus is on whether the class members are seeking relief from a "pattern or practice that is generally applicable to the class as a whole." *Rodriguez*, *supra*, 591 F.3d at 1125 (certifying a Rule 23(b)(2) class challenging the government's "practice of prolonged detention of detainees without providing a bond hearing" and rejecting the defendant's contention that "some class members may not ultimately be entitled to a bond

hearing."); *A.F. ex rel. Legaard*, *supra*, 300 F.R.D. at 485 ("Resolving the legal question posed by Plaintiffs provides complete relief as to the *specific* issue raised by the 101 class, even if it does not ultimately address every class members' needs or issues.") (emphasis in original).[6]

Moreover, Blue Shield has forfeited any contention that lumbar ADR may not be medically appropriate for a given individual. As Escalante showed in its moving papers, and as Blue Shield concedes, Blue Shield has denied all lumbar ADR requests in categorical fashion without considering whether the procedure may be investigational with respect to a given patient's "indications."

In *Harlick v. Blue Shield of California*, 686 F.3d 699 (9th Cir. 2012), Blue Shield rejected an ERISA claimant's request for treatment of her anorexia at a residential facility on the basis the plan did not cover "residential care." She sued, arguing that California's Mental Health Parity Act required coverage for this type of treatment. In agreeing, the Ninth Circuit rejected Blue Shield's argument that the case should be remanded to determine the "medical necessity" of residential care for the plaintiff's particular condition. "By failing to assert during the administrative process that medical necessity was a reason for denying Harlick's claim, Blue Shield forfeited the ability to assert that defense in the litigation now before us." *Id*. at 721.

Likewise, here, Blue Shield has failed to assert that lumbar ADR was investigational or "medically necessary" for any particular patient. Blue Shield's uniform denial letters and appeal rejection letters merely recite Blue Shield's across-

---

[6]  Because individual class members' entitlement to lumbar ADR is not at issue, whether any class members suffering from disabling back pain elected to pursue spinal fusion surgery is a non-issue. As Blue Shield acknowledges, whether a class member had spinal fusion goes to that class members' eligibility for, or entitlement to, lumbar ADR. (Opp. at p. 11) ("Once patients have undergone spinal fusion, they are ineligible for lumbar ADR[.]"). In addition, the declarations of Leslie Crawford and the undisclosed Dr. Allen are inadmissible for the propositions that one class member had spinal fusion and that persons who have had spinal fusion are ineligible for lumbar ADR. *See* Escalante's Objections to Evidence at pp. 4-12.

the-board position on lumbar ADR and do not address any particular patient's medical suitability for the procedure. (Plaintiffs' Ex. 7 at 145-147, 148; Ex. 12 at 229-230; Ex. 13 at 231-233.) Blue Shield has, therefore, forfeited its right to raise such an issue now.

Blue Shield's statute of limitations argument fails for similar reasons. The argument goes to the viability of the individual class members' claims, which is not a valid or necessary consideration under Rule 23(b)(2). *Rodriguez*, *supra*, 591 F.3d at 1125 ("[Rule 23(b)(2)] does not require us to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them.").

The statute of limitations argument is not even a commonality argument for this proposed class. Indeed, it assumes what may happen after a class is certified and there is a determination in favor of the class. Whether there is or is not the need for a given individual to bring some type of follow-up litigation is irrelevant.

And even if the scenario envisioned by Blue Shield were to occur, Blue Shield in that circumstance would be making a new denial based upon its decision that the procedure, while not always investigational, was investigational for the medical profile of a given individual. This would necessarily trigger a *new* limitations period. Blue Shield's statute of limitations concerns are overblown and should therefore be rejected.

## C.    Typicality

Blue Shield does not dispute that Mr. Escalante's claim is on all fours with the claims of all putative class members in attacking its categorical denial of all lumbar ADR requests as investigational. Instead, Blue Shield argues that Mr. Escalante's breach of fiduciary claim (but not his clarification of rights claim) is not typical because, in the context of an ERISA action, each class member's "harm" must be shown.

This is wrong. Where the plaintiff "moves only for class certification of an injunctive class and seek[s] injunctive relief under ERISA, no showing of individualized harm of class members is required[.]"*A.F. ex rel. Legaard*, *supra*, 300 F.R.D. at 485; *Cent. Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005) (holding that "a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant"); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) (finding that the plaintiff "need not demonstrate actual harm in order to have standing to seek injunctive relief" under ERISA); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1171 (D.C. Cir. 1994) (holding that the plaintiff need not demonstrate actual harm in order to file suit for breach of fiduciary duty under ERISA).

Even if a showing of uniform harm were required, it has been made. The injunctive relief requested here is not that Blue Shield pay every claim but that it process them without the offending "investigational" denial basis. The harm here is Blue Shield's class-wide refusal to review the requests for lumbar ADR ***at all*** given its blanket rejection of them as investigational. To remedy this harm, Escalante and the proposed class request an injunction compelling Blue Shield to retract its categorical "investigational" denial basis of lumbar ADR surgery, provide notice of said determination in the form and manner required by ERISA to all subscribers/members who have had requests for lumbar ADR surgery denied, and provide for the re-review of all improperly denied claims under the appropriate standard. (Complaint, ¶ 33.)

The uniform nature of the harm suffered by Escalante and the class defeats any argument by Blue Shield that Escalante's claims are not typical of the class. In *Parsons v. Ryan*, *supra*, the defendants argued that there was a lack of typicality because the inmates had different health histories and may or may not need health

care in the future. The court found that "[i]t does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs" because their claims needed only to be typical of the 23(b)(2) issue raised. *Parsons*, *supra*, 754 F.3d at 686.

In *A.F. ex rel Legaard v. Providence Health Plan*, *supra*, the court found that the plaintiffs' claims were "typical of the proposed injunctive class . . . because the requested injunction, if granted, would provide relief to all class members similarly situated." *A.F. ex rel Legaard*, 300 F.R.D. at 482. That relief was a determination that a uniformly applied ERISA policy exclusion would be deemed inapplicable regardless of other policy defenses that could be raised.

Blue Shield's unpublished case of *Romberio v. Unumprovident Corp.*, 385 Fed.Appx. 423 (6th Cir. 2009), is inapposite. The plaintiffs there alleged that their disability insurer had engaged in various unfair claims processing acts that allegedly caused their claims to be denied. Hence, the case concerned "a group of loosely defined practices that were *not* applied uniformly to a discrete easily-defined class of individuals." *Id*. at 431-432 (emphasis in original). That is not the case here. There is no issue here as to why or how Blue Shield denied anyone's request for lumbar ADR. The answer to the question of whether Blue Shield's across-the-board denial is correct or incorrect will be the same for all class members.

### D.   Adequacy of Representation

Blue Shield does not dispute the adequacy of representation element other than to repeat its typicality arguments. Blue Shield has not identified any conflict Escalante has with the proposed class or assert that he and his counsel will not vigorously prosecute this action on behalf of the class. Adequacy of representation, therefore, has been shown. *Rodriguez*, *supra*, 591 F.3d at 1125.

Blue Shield also asserts that "three independent surgeons have concluded … that lumbar ADR surgery would not benefit [Escalante] more than spinal fusion." ///

(Opp. at p. 23.) But those IMR reports[7] simply point up why a legal determination is required here.

Three anonymous physicians somehow came to use identical language in misstating the applicable standard, apparently working off of some sort of script. (Ex. 1 to Crawford Decl., at BSC000192, 195 and 197.) Blue Shield's "Experimental or Investigational" exclusion contains no requirement that a procedure be "more beneficial" than alternatives. (Plaintiff's Exhibit 5 at 110.)

Moreover, these physicians are not competent to decide the issue of whether, as a matter of contract interpretation, the FDA approval of lumbar ADR bars application of the exclusion. Indeed, it appears they were completely unaware of the exclusion's definition.

That Blue Shield would rely on these erroneous and irrelevant reports is all the more reason for one legal determination of its across-the-board denials of lumbar ADR.

### E.    Ascertainability/Cohesiveness

As explained below, Blue Shield's arguments that the proposed class is not ascertainable and lacks cohesiveness have no merit.

#### 1.    Ascertainability is a non-issue in the context of a Rule 23(b)(1) or (b)(2) class action.

In its moving papers, Escalante provided numerous published authorities for the proposition that the "implicit requirement" of ascertainability is a non-issue and can be dispensed with where, as here, class certification is being sought pursuant to Rule 23(b)(1) and (b)(2). These cases are rooted in the sound logic that classes certified pursuant to Rule 23(b)(1) and (b)(2) provide primarily injunctive and declaratory relief, not monetary relief, and therefore do not require notice. Blue Shield has no response to these authorities, and in fact admits their relevance to this

---

[7] The IMR reports are inadmissible as explained in Plaintiff's Objections to Evidence at pp. 3-4.

Court's analysis when it states that "the Ninth Circuit has not spoken on [the ascertainability] question." (Opp. at p. 23.)

Moreover, the lone case Blue Shield cites, *Daniel F. v. Blue Shield of California*, 305 F.R.D. 115 (N.D. Cal. 2014), is a Rule 23(b)(3) case. As the Ninth Circuit has explained, the manageability concerns expressed by the Court in *Daniel F.* have no place in the Rule 23(b)(2) analysis. *Rodriguez*, *supra*, 591 F.3d at 1125 ("Further, unlike actions brought under one of the other 23(b) prongs, questions of manageability and judicial economy are … irrelevant to 23(b)(2) class actions.").

### 2.   The proposed class is cohesive.

Blue Shield's contention that the proposed class is not "cohesive" is essentially a rehash of its commonality and typicality arguments. As already explained, the fact that the proposed class may "include[ ] individuals who may not have been eligible for lumbar ADR surgery even if it were not considered investigational" is not a bar to certification. (Opp. at p. 24.) Because Blue Shield uniformly denies requests for lumbar ADR as "investigational" without regard to medical necessity, a particular class member's entitlement to lumbar ADR is not a relevant consideration herein. Indeed, as to the class, the relief sought is not the provision of the surgery itself—it is the lifting of Blue Shield's categorical "investigational" bar, opening the door to an appropriate determination of "medical necessity" for each class member. *Rodriguez*, *supra*, 591 F.3d at 1125; *A.F. ex rel. Legaard*, *supra*, 300 F.R.D. at 485.

Likewise, Blue Shield's concern that the proposed class "includes individuals who never sought—and had no need or desire to seek—coverage for lumbar ADR surgery" does not withstand scrutiny. (Opp. at p. 25.) That is simply another way of saying that the proposed class may include individuals who did not suffer any harm as a result of Blue Shield's policies, practices and procedures. As explained above, however, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from

meeting the requirements of Rule 23(b)(2)." *Rodriguez*, *supra*, 591 F.3d at 1125. It follows from *Rodriguez* that "numerous individual inquiries" into "who was aware of what information, and how precisely they reacted to such knowledge," will simply not be required. (Opp. at p. 25.)

## III.   CONCLUSION

For all of the foregoing reasons, and the reasons set forth in the moving papers, Escalante respectfully requests the Court to grant his motion to certify the case as a class action under Rule 23(b)(1)(A), Rule 23(b)(1)(B), and Rule 23(b)(2); to appoint Escalante as a class representative; and to appoint Escalante's counsel as class counsel.

DATED: June 8, 2015                    GIANELLI & MORRIS
                                       LAW OFFICES OF RONALD A. MARRON


                                       By:___/s/_Adrian J. Barrio_____
                                            ROBERT S. GIANELLI
                                            JOSHUA S. DAVIS
                                            ADRIAN J. BARRIO
                                            Attorneys for Plaintiff