O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LUIS ESCALANTE, on behalf of himself and all others similarly situated, | ) ) ) ) | Case No. CV 14-03021 DDP (PJWx) |
| Plaintiff, | ) ) | **ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | ) ) | |
| CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA, | ) ) ) ) | [Dkt. 61] |
| Defendant. | ) ) | |

Presently before the court is Plaintiff's Motion for Partial Summary Judgment. Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following Order.

**I. Background**

As described in this court's earlier Order, Plaintiff Luis Escalante was a member of a group health policy issued by Defendant Blue Shield of California ("Blue Shield" or "Defendant"). Plaintiff alleges that he suffers from degenerative disc disease, and that his doctor recommended he undergo artificial disc

1  replacement ("ADR") surgery instead of more traditional lumbar
2  fusion.  As a consequence, Plaintiff requested authorization from
3  Blue Shield to undergo ADR surgery.  Blue Shield denied Plaintiff's
4  request, stating that coverage for the ADR surgery was not approved
5  because "the efficacy of [ADR] has not been validated by the peer
6  reviewed literature."  Plaintiff appealed the decision, and was
7  again denied.

  The terms of Plaintiff's insurance plan, as stated in an
Evidence of Coverage ("EOC") document, exclude coverage for
services that are "Experimental or Investigational in Nature."
(Mot., Ex. 7 at 118.)  The EOC defines "Experimental or
Investigation in Nature" to mean:

> [A]ny treatment, therapy, procedure, . . . equipment or
> equipment usage, device or device usage, or supplies
> which are not recognized in accordance with generally
> accepted professional medical standards as being safe and
> effective for use in the treatment of the illness,
> injury, or condition at issue.  Services which require
> approval by the federal government or any agency thereof,
> or by any State government agency, prior to use and where
> such approval has not been granted at the time the
> services or supplies were rendered, shall be considered
> Experimental of Investigational in Nature.  Services or
> supplies which themselves are not approved or recognized
> in accordance with accepted professional medical
> standards, but nevertheless are authorized by law or by a
> government agency for use in testing, trials, or other
> studies on human patients shall be considered
> Experimental or Investigational in Nature.

(Id. at 137.)

  There appears to be no dispute that the artificial disc
Plaintiff sought to have implanted, the ProDisc-L, is a Class III
medical device that received premarket approval ("PMA") from the
Food and Drug Administration ("FDA") in 2006, several years before
Plaintiff requested ADR surgery from Blue Shield.  Nevertheless,

2

Blue Shield deems ADR surgery as investigational because of a lack of "long-term efficacy and safety in comparison to standard spinal fusion techniques," and therefore denies all plan participants' requests and claims for ADR. Plaintiff now moves for partial summary judgment on the question whether the plain language of the EOC's investigational exclusion can apply to a device that has already received FDA approval.

**II.  Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a

party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

As an initial matter, the parties dispute the legal standard applicable to the court's analysis of the plan language. Blue Shield, citing to Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962 (9th Cir. 2006), contends that this court should apply an abuse of discretion standard. Blue Shield's invocation of that standard is based on language in the plan that grants Blue Shield "the power and discretionary authority to construe and interpret the provisions of the Contract [and] to determine the Benefits of

4

the Contract . . . ." (Mot., Ex. 7 at 131.) In such cases, the Abatie court held that courts must apply the abuse of discretion standard in reviewing a denial of benefits. Abatie, 458 F.3d at 963.

The instant motion, however, does not seek summary judgment regarding the reasonableness of Blue Shield's denial of benefits, but rather concerns a more fundamental question about the meaning of the contract itself. Determination of what that plain language is in the first instance is a question of law, which the court must review de novo and in accordance with the plain and ordinary meaning that an average reader would attribute to it. McDaniel v. Chevron Corp., 203 F.3d 1099, 1110 (9th Cir. 2000). A plan administrator would necessarily abuse his discretion by construing plan terms "in a way that conflicts with the plain language of the plan." Pacific Shores Hosp. V. United Behavioral Health, 764 F.3d 1030, 1042 (9th Cir. 2014). When the terms of a plan are subject to more than one reasonable interpretation, however, that language cannot be said to be plain and unambiguous. McDaniel, 203 F.3d at 1110.

Here, Plaintiff focuses primarily on the second sentence of the "Experimental or Investigational in Nature" definition. That sentence states, "Services which require approval by the federal government or any agency thereof, or by any State government agency, prior to use and where such approval has not been granted at the time or the services or supplies were rendered, shall be considered Experimental of Investigational in Nature." (Mot., Ex. 7 at 137). Plaintiff contends that because devices that require, but have not yet received government approval are

5

"investigational," then the obverse must be true, and devices that have received the requisite approval cannot possibly be considered investigational. Thus, Plaintiff asserts, because the ProDisc-L has already received FDA approval, Blue Shield's labeling of ADR surgery as investigational conflicts with the plain language of the plan.

Were the investigational exclusion comprised only by that single, second sentence, Plaintiff's position would be more convincing. The first sentence of the definition, however, is far more broad in scope. It states that the term "experimental or investigational in nature" includes "any treatment, therapy, procedure, drug or drug usage, facility or facility usage, equipment or equipment usage, or supplies which are not recognized in accordance with generally accepted professional medical standards as being safe and effective for use in the treatment of the illness, injury, or condition at issue." (Mot., Ex. 7 at 137.) The second (and third) sentences, which categorically identify certain treatments as experimental, do little to qualify the first sentence.

Plaintiff therefore argues, in essence, that an FDA-approved device necessarily qualifies as "recognized in accordance with generally accepted professional medical standards as being safe and effective for use." While, as a practical matter, there may be significant overlap between safety and efficacy as determined by generally accepted medical standards and as determined by the FDA, the terms of the plan, on their face, do not import FDA standards or otherwise equate FDA approval with that of the general medical community. Indeed, the factors relevant to the

6

FDA's analysis, including the intended user base and the balance of potential health benefits against probable risks, may not be the same as in the broader medical profession. See 21 C.F.R. § 860.7.

This is not to say that, in this case, there is necessarily any difference between the FDA and generally accepted professional medical standards regarding the safety and efficacy of ADR devices. That is a question of fact beyond the scope of Plaintiff's motion and beyond the scope of this Order. However, given the plan's broad definition of "Experimental of Investigational in Nature," with reference to unspecified "generally accepted professional medical standards," the court cannot agree with Plaintiff that the plan unambiguously states that FDA-approved devices cannot possibly also be deemed experimental or investigational.[1]

**IV. Conclusion**

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.

Dated: February 24, 2016

DEAN D. PREGERSON
United States District Judge

---

[1] Nothing in this Order shall be read to suggest that the Court takes any position on the merits of this case or the reasonableness of Defendants' blanket denials.

7